

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-16-2001

# Francis v. Reno

Precedential or Non-Precedential:

Docket 00-2375

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Francis v. Reno" (2001). *2001 Decisions.* Paper 238.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/238

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 16, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2375

ROBERT FRANCIS,

　　　　Petitioner,

v.

JANET RENO, Attorney General;
and DORIS MEISSNER,
Commissioner of the Immigration
and Naturalization Service

Petition for Review of an Order of the
Board of Immigration Appeals
(INS No. A26-458-287)

Argued February 7, 2001

Before: SCIRICA, McKEE and STAPLETON, Circuit  Judges

(Opinion Filed: October 16, 2001)

　　　　Stephan D. Converse, Esquire
　　　　 (Argued)
　　　　Anderson, Converse & Finnick, P.C.
　　　　1423 East Market Street
　　　　York, Pennsylvania 17403
　　　　Attorney for Petitioner

David W. Ogden
Assistant Attorney General
Civil Division
Linda S. Wendtland
Assistant Director
Gretchen M. Wolfinger, Esquire
 (Argued)
Terri J. Scadron, Esquire
Matthew R. Hall, Esquire
Office Of immigration Litigation
Civil Division
United States Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Attorneys for Respondent

OPINION OF THE COURT

McKEE, Circuit Judge:

We are asked to decide if a state misdemeanor conviction for vehicular homicide is a "crime of violence" within the meaning of 18 U.S.C. S 16. Robert Francis was convicted of two counts of homicide by vehicle in Pennsylvania. Thereafter, the Immigration and Nationalization Service charged Francis with removability based upon its assertion that he had been convicted of an "aggravated felony" pursuant to the Immigration and Nationality Act ("INA"). 8 U.S.C. S 1227(a)(2)(A)(iii).

The Immigration Judge ruled that homicide by vehicle as defined in Pennsylvania is not an "aggravated felony" under the INA, and the INS appealed to the Board of Immigration Appeals ("BIA"). The BIA disagreed. The Board ruled that homicide by vehicle is "a crime of violence" under S16, thus it is an "aggravated felony" under the INA, and thus Francis is removable. The Board therefore entered a final order of removal against Francis. This petition for review followed. For the reasons that follow, we will grant Francis' petition and remand to the BIA with instructions to vacate its order of removal.

I. Background Facts and Procedure

Robert Francis is 67 years-old, has lived in the United States for over 25 years, and is married to a United States citizen. Administrative Record ("AR") at 102. However, Francis is a citizen of Jamaica. He entered the United States in 1975 as a "Nonimmigrant Visitor for Pleasure." In 1987, he adjusted his immigration status to "Conditional Resident," a legal resident status.

In May of 1993, Francis caused a tragic traffic accident wherein two people were killed on Interstate 95 in Philadelphia. He was thereafter convicted in state court of two counts of homicide by vehicle in violation of 18 Pa. C.S.A. S 3732.1 That statute defines homicide by vehicle, and categorizes it as a misdemeanor of the first degree. Francis was sentenced to two consecutive sentences of eighteen to sixty months in prison for the conviction. At the conclusion of that sentence, he was held on an INS detainer. The INS then initiated removal proceedings based upon its assertion that his state court conviction made him removable as an "aggravated felon" under the BIA. As noted above, the Immigration Judge terminated the proceedings in Francis' favor, but the INS reversed and ordered his removal. That order of removal is now before us based upon Francis' petition for review.

II. Jurisdiction

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) divests this court of jurisdiction over a final order of removal against an alien convicted of certain delineated offenses. 8 U.S.C.

---

1. Section 3732 provides:

> Any person who unintentionally causes the death of another person
> while engaged in the violation of any law of this Commonwealth or
> municipal ordinance applying to the operation or use of a vehicle
or
> to the regulation of traffic except section 3731 (relating to
driving
> under influence of alcohol or controlled substance) is guilty of
> homicide by vehicle, a misdemeanor of the first degree, when the
> violation is the cause of death.

18 Pa. C.S.A. 3732.

3

S 1252(a)(2)(C);2 Liang v. INS, 206 F.3d 308 (3d Cir. 2000). However, jurisdiction is only removed under the IIRIRA if "(1) the petitioner is an alien (2) who is deportable by reason of having been convicted of one of the enumerated offenses." Drakes v. Zimski, 240 F.3d 246, 247 (3d Cir. 2001).3 Therefore, we must initially determine whether these two statutory prerequisites to the limitation of our jurisdiction are satisfied. Id.

There is no dispute that Francis is an alien. Thus, the jurisdictional question that we must address is whether Francis' offense –- homicide by vehicle in violation of 18 Pa. C.S.A. S 3732 –- is "one of the enumerated offenses" under the IIRIRA. We hold that it is not.

_____

2. Section 1252(a)(2)(C) provides:

(C) Orders against criminal aliens

Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii) [entitled "Aggravated felony"], (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

3. We recognize that the Supreme Court has recently held that certain provisions of the Illegal Immigration Reform and Immigrant Responsibility Act, including 8 U.S.C.A. S 1252(a)(2)(C), do not deprive district courts of jurisdiction to review a resident alien's habeas corpus petition challenging a BIA decision. INS v. Cyr , ___ S.Ct. ___, 2001 WL 703922 *11 (U.S. June 25, 2001). That is in accord with our decision in Liang v. INS, 206 F.3d 308 (3d Cir. 2000). We pause here merely to note that the Supreme Court expressly decided not to address the jurisdictional question of whether a court of appeals has jurisdiction to determine whether the S 1252(a)(2)(C) jurisdictional bar applies to petitions for review of BIA decisions, i.e. whether an alien has been convicted of an aggravated felony. Calcano–Martinez v. INS, ___ U.S. ___, 2001 WL 703943 *1 n.2 (U.S. June 25, 2001) (explaining that the government conceded that courts of appeals have jurisdiction to determine the jurisdictional facts of "whether an individual is an alien and whether he or she has been convicted of an `aggravated felony' " but that the petitions there did not raise this issue).

4

III. Discussion

8 U.S.C. S 1227(a)(2)(A)(iii) states that any alien convicted of an "aggravated felony" is deportable. 8 U.S.C. S 1101(a)(43)(F) defines "aggravated felony" under the INA to include any "crime of violence." The INA does not directly define "crime of violence." Instead, it incorporates the definitions set forth in the Crimes Code at 18 U.S.C. S 16. See 8 U.S.C. S 1101 (43)(F).4 "Crime of violence" is defined therein as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. S 16. The BIA concluded that subsection (a) is not applicable to Francis' state conviction, but held that his offense fell within the confines of subsection (b). We agree that Francis' state conviction does not fall underS 16(a). However, we disagree with the BIA's conclusion that it is included under S 16(b).

In order for a conviction to be a "crime of violence" under subsection (b), the offense must first be a "felony;" and second, it must be an offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. S 16(b).

Francis argues that vehicular homicide under Pennsylvania law fails to meet either requirement. He argues that the offense is a misdemeanor under Pennsylvania law and therefore cannot qualify as a felony for purposes of the INA. He also argues that it is not an offense that "by its nature, involves a substantial risk that physical force against the person or property of another

_____

4. 8 U.S.C. S 1101(43) states that "aggravated felony" includes . . . (F) a
crime of violence (as defined in section 16 of Title 18, . . .) For which the
term of imprisonment [is] at least one year."

5

may be used in the course of committing the offense." 18 U.S.C. S 16(b). Finally, Francis argues thatS 16(b) requires specific intent and that homicide by vehicle involves a much lower level of culpability under Pennsylvania law.

A. Whether A Misdemeanor Can Be A Felony
Under S 16(b)

Francis claims that inasmuch as he was convicted of a misdemeanor under Pennsylvania law, he is not a felon; "much less an `aggravated' one." Francis Br. at 6. In United States v. Graham, 169 F.3d 787 (3d Cir. 1999), we held that a crime can be regarded as an aggravated felony even if it is categorized as a misdemeanor. There, Graham pled guilty to illegally reentering this country following deportation in violation of 8 U.S.C. S 1326. At sentencing, an issue arose as to whether he should be classified as an aggravated felon under U.S.S.G. S 2L1.2(b)(1)(B). A defendant who is classified as an aggravated felon faces a sixteen-level increase in his/her offense level under the Sentencing Guidelines.5 The district court sentenced Graham as an aggravated felon based upon the court's conclusion that his prior state misdemeanor conviction for petit larceny qualified as an aggravated felony even though the state where he committed the offense defined it as a misdemeanor. "The aggravated felony classification changed Graham's guideline sentence range from 21-27 months to 70-87 months." 169 F.3d at 788.

On appeal, we framed the issue as follows:

> whether a misdemeanor can be an "aggravated felony" under a provision of federal law even if it is not, technically speaking a felony at all. The particular question is whether petit larceny, a class A misdemeanor under New York law that carries a maximum sentence of one year, can subject a federal defendant to the extreme sanctions imposed by the "aggravated felon" classification [contained in 8 U.S.C. S 1101(a)(43)].

_____

5. U.S.S.G. S 2L1.2(b)(1)(B) incorporates the aggravated felony definitions
used in 8 U.S.C. S 1101(a)(43).

6

Id., at 788. We answered in the affirmative. In resolving the issue, we focused on an amendment to S 1101(a)(43)(G), which lowered the imprisonment threshold from five years to one year. We explained that felonies had historically been defined as those crimes that are punishable by at least a year in prison. Those offenses punishable by less time in prison had historically been defined as misdemeanors. However, we concluded that the term "aggravated felony" is a term of art which can include "certain misdemeanants who receive a sentence of one year," id. at 792, even though the underlying crime has been labeled a "misdemeanor" under state law.

Our analysis in Graham does not, however, answer the question presented here. Graham was an aggravated felon pursuant to 8 U.S.C. S 1101(a)(43)(G). That subsection specifically defined theft crimes as aggravated "felonies" so long as "the term of imprisonment [is] at least one year." Id. at 789.6 Graham had clearly been convicted of a state theft offense, and that offense, though categorized by New York as a Class A misdemeanor, had "a maximum of a year's imprisonment under New York law." Id. at 789. That is all subsection (43)(G) required. Francis is charged with an aggravated felony under subsection (43)(F). As stated above, that provision of the INA requires a "crime of violence" under 18 U.S.C. S 16. We must therefore determine if S 16(b), which specifically refers only to "felonies," includes offenses that have been categorized as "misdemeanors" by the state that has defined the underlying conduct as criminal. Thus, although Graham may be instructive, it does not control our determination of Congress' intent in adopting 18 U.S.C. S 16.

The BIA concluded that it is irrelevant that Pennsylvania labels the offense as a misdemeanor. The BIA used the federal default definition of felony found in 18 U.S.C. S 3559 to conclude that, irrespective of the state classification, Francis' conviction was a felony under federal law. 18 U.S.C. S 3559 defines "felony" as an offense that is not otherwise classified where "the maximum term of

_____

6. We concluded that the verb "is" was inadvertently omitted from the text of the statute.

7

imprisonment authorized is . . . less than five years but more than one year."7 The BIA reasoned "it is both fair and logical to rely on the federal statutory definition of `felony' when that term appears in a federal statute that is applicable in the respondent's case." AR at 4.

The government argues that the BIA's analysis is entitled to deference under Chevron v. Natural Resources Defense Council, 467 U.S. 837 (1984). Under Chevron :

> [w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. [1] First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. [2] If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, 467 U.S. 837, 842-43 (1984) (emphasis added). However, in Sandoval v. Reno, 166 F.3d 225,239 (3d Cir. 1999) (citing INS v. Cardoza-Fonseca, 480 U.S. 421, 446

_____

7. S 3559 provides:

> (a) Classification.--An offense that is not specifically classified
by a
> letter grade in the section defining it, is classified if the
maximum
> term of imprisonment authorized is--

> ***
> ***
> ***
> ***

> (5) less than five years but more than one year, as a Class E
> felony. . .

18 U.S.C. S 3559(a)(5) (emphasis added).

8

(1987)), we noted that pure questions of statutory construction must be resolved by courts. There, we explained that Chevron deference will only apply to an inquiry "that implicates agency expertise in a meaningful way." Id. More recently, in Drakes v. Zimski, 240 F.3d at 247, we intimated that Chevron deference might not apply in the context of defining "forgery" within the meaning of 8 U.S.C. S 1101(a)(43)(R), because the BIA did not utilize any specific expertise in interpreting that provision of the INA. Federal courts regularly interpret such terms. Id. at 247.

Clearly, the BIA did not rely upon any expertise in interpreting the meaning of "felony" within 18 U.S.C. S 16; a general criminal statute. Moreover, Chevron instructs that we accord deference only to the BIA's "construction of the statute which it administers." Chevron, 467 U.S. at 842. The BIA is not charged with administering 18 U.S.C.S 16, and that statute is not transformed into an immigration law merely because it is incorporated into the INA by S 1101(43)(F). We therefore conclude that the BIA's interpretation of 8 U.S.C. S 16 is not entitled to deference under Chevron.8

Congress did not use the term "felony" inS 16(a). Rather, S 16(a) is narrowly drawn to include only crimes whose elements require the "use, attempted use, or threatened use of physical force." Although S 16(b) is specifically limited to felonies, it does not include all felonies. It is limited to those felonies that "by [their] nature involve[s] a substantial risk that . . . force . . . may be used." Clearly, Congress intended to include felonies and misdemeanors under subsection (a), but only intended certain felonies to be included under subsection (b). The Senate Report for the Comprehensive Crime Control Act of 1984 makes this clear.

> The term `crime of violence' is defined, for purposes of all of Title 18 U.S.C. in Section 1001 of the Bill (the first section of Part A of Title X) . . . The term means an offense -- either a felony or a misdemeanor -- that has as an element the use, attempted use, or

---

8. Moreover, for the reasons we set forth below, we would reverse the decision of the BIA even if Chevron applied because the BIA's analysis is not a reasonable interpretation of 8 U.S.C. S 1101(43)(F).

9

threatened use of physical force against the person or property of another, or any felony that, by its nature, involves the substantial risk that physical force against person or property may be used in the course of its commission.

S.Rep. No. 225 (1983), reprinted in 1984 U.S.C.C.A.N. 3182 (emphasis added). Congress was obviously aware that the definition of a "felony" varies from jurisdiction to jurisdiction, and it could certainly have defined an "aggravated felony" under the INA to include any state offense that would be classified as a felony under federal law. It did not do so.

Francis' crime is only arguably a felony because of the application of 18 U.S.C. S 3559. However, S 3559 was intended as a last resort that would be employed only if "[a]n offense that is not specifically classified . . . in the section defining it, [provides for a] maximum term of imprisonment [of] less than five years but more than one year." Such crimes are, by default, categorized under federal law as Class E felonies. 18 U.S.C. S 3559(a)(5) (emphasis added). In United States v. Donley, we explained that:

Title 18 U.S.C. S 3559 assigns letter grades to offenses that previously had none on the basis of the maximum terms of imprisonment authorized by statutes describing the offenses. One letter grade comprises offenses that carry different statutory penalties in the underlying statutes describing them. For example, first and second degree murder are both classified as Class A felonies under S 3559.

878 F.2d 735, 739 (3d Cir. 1989) (emphasis added). Labeling a particular offense as a misdemeanor should end the matter for the purposes of S 16(b). After all, Francis did not violate federal law, he violated state law. C.f. Doe v. Hartz, 134 F.3d 1339, 1343 (8th Cir. 1998) (explaining in the context of the Violence Against Women Act 42 U.S.C. SS 13981–14040, that a state misdemeanor is not a crime of violence within the meaning of S 16 (b) because "we cannot simply borrow the federal classification of a felony and apply it to conduct that could not constitute a crime under federal law.")

10

At oral argument, the INS contended that the adoption of the federal definition for the term "felony" provides a "federal objective standard" in treating all resident aliens alike regardless of the states classification of the crime. The INS argued that another state could charge the very same conduct as a felony, and therefore, adopting a federal classification affords equal treatment to all petitioners regardless of the place of conviction. We reject this policy argument for several reasons. First, as we have already explained, S 16(a) includes misdemeanors and felonies. Under S 16(a), similar conduct is included in the definition of "aggravated felony" regardless of the state's label.

Moreover, the government's argument for uniformity ignores that maximum penalties will also vary from jurisdiction to jurisdiction. See The Unconstitutionality of Nonuniform Immigration Consequences of "Aggravated Felony" Convictions, 74 N.Y.U. L.Rev. 1696,1725–29 (1999). Therefore, relying upon the maximum penalty prescribed by a given state to determine if an offense is a felony using S 3559 does not eliminate nonuniform treatment of offenders from state to state. The disparity merely shifts to the differing maximum sentences prescribed, rather than a state's classification.

In addition, the INS' "equality" argument fails to give effect to the language of S 1101(a)(43)(F). Section 1101(a)(43)(F) defines aggravated felony as a "crime of violence [ ] as defined in section 16 of Title 18 for which the term of imprisonment [is] at least one year." 8 U.S.C. S 1101(a)(43)(F) (emphasis added). It would create a redundancy to define "felony" in S 16(b) as an offense involving "a substantial risk of force" for which the maximum sentence is more than one year, see 18 U.S.C. S 3559(a)(5), when S 1101(a)(43)(F) already defines an aggravated felony to include "crime[s] of violence as defined in section 16 Title 18 for which the term of imprisonment [is] at least one year.9  Section 1101(a)(43)(F) has already captured those offenses. In this context, we think it is

_____

9. In 1996, Congress amended S 1101(a)(43)(F),(G),(N), and (P), by lowering the maximum penalty threshold from at least five years to at least one year. 110 Stat. 3009, 3009–627.

incongruous to read "felony" in S 16(b) as being defined by the applicable term of imprisonment set by the underlying state offense. The Board is already applying a "federal objective standard" to all resident aliens, one that has been expressly dictated by Congress' use of the words"for which the term of imprisonment [is] at least one year." Since this phrase already includes or excludes aliens based on the length of the sentence, we see no reason why we should read the term "felony" in Section 16(b) as contingent upon the term of imprisonment rather than a state's categorization.

Reading the statute without importing the default classifications in 18 U.S.C. S 3559 eliminates this redundancy. If a state has categorized an offense as a misdemeanor or a felony, subsection (a) will define the offense as an "aggravated felony" if the elements include the "use, attempted use, or threatened use of . . . force." 18 U.S.C. S 16(a). Certain offenses categorized as felonies under state law, having a maximum of at least one year, as required by 8 U.S.C. S 1101 (43) (F), are also"aggravated felonies." This captures those instances where a state may define felonies to include offenses that have a shorter maximum than one year imprisonment. However, where as here, the offense is categorized as a misdemeanor under state law, it is excluded unless it involves force and falls under subsection 16(a). Thus, by relying upon state law to provide the categorization, we eliminate the redundancy that would otherwise result from including both a maximum of one year imprisonment under S 1101(43)(F) and the condition precedent of "felony" inS 16(b) that is expressly incorporated into S 1101(43)(F). 10

This interpretation is also consistent with the rule of lenity as embodied in "the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien." INS v. Cyr, ___ U.S. ___, 2001 WL

_____

10. Our approach of using the state label is consistent with United States v. Villanueva-Gaxiola, 119 F. Supp.2d 1185,1190 (Dist. Kansas 2000) (finding that "[b]ecause California Penal Code S 12020 encompasses misdemeanor offenses, it cannot meet the definition of `crime of violence' in 18 U.S.C. S 16(b).").

703922 *14 (U.S. June 25, 2001) (quoting INS v. Cardoza-Fonseca, 480 U.S. 42, 449 (1987)).11  This is no small consideration given the changes in immigration law effectuated by the IIRIRA. For all the reasons set forth above, we conclude that Francis' state court conviction was not an "aggravated felony" under the INA.

B. Whether Homicide By Vehicle Can Otherwise Fall Under S (16(b)

Moreover, even if we assume arguendo that Francis' misdemeanor conviction of vehicular homicide can somehow be converted into a felony for S 16(b) purposes, we would still conclude that his conviction is not an "aggravated felony." As noted above, S 16(b) also requires that he be convicted of a crime that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. S 16(b). Homicide by vehicle in Pennsylvania is not such an offense.

A brief review of the procedural history places our discussion in its proper context. Francis was convicted of two counts of homicide by vehicle following a trial, and he appealed to the Superior Court of Pennsylvania. He argued that the evidence presented at trial was insufficient to sustain a conviction. The Superior Court rejected this argument. Commonwealth v. Francis, 665 A.2d 821,823 (Pa. Super. 1995). In doing so, the court held that Francis was guilty of criminal negligence rather than recklessness. The court reasoned:

_____

11. We are aware that we refused to apply the rule of lenity in Graham, however, as we note in our discussion of Graham , supra, there was no ambiguity in the text we were interpreting there. As is evident from our discussion, the same can not be said of the statutes at issue here. Moreover, we expressly allowed for the rule of lenity in Steele v. Blackman, 236 F3d 130, (3rd Cir. 2001) ("Since the distribution of marijuana . . . is not inherently a felony, it seems to us that the only alternative to so regarding it consistent with the rule of lenity would be to treat any S 844 offense in this context as a misdemeanor.") (emphasis added).

13

The Commonwealth established beyond a reasonable doubt that appellant violated S75 Pa.C.S. 4903, which prohibits any backing up on a limited access highway such as I-95. The Commonwealth also proved beyond a reasonable doubt, through expert and eyewitness testimony, that appellant's act of backing up his vehicle into traffic directly caused Mr. Rutter to lose control of his vehicle, which precipitated the multiple vehicle accident in which the Rutters were killed. Finally, we find that appellant's conduct was criminally negligent, as the backing up of a vehicle into oncoming traffic traveling 55 miles per hour is a gross deviation from the standard of care observed by a reasonable person. See Heck, 517 Pa. at 201, 535 A.2d at 580 (criminal negligence requires gross deviation from standard of care reasonable person would observe); In the Interest of Hyduke, 371 Pa.Super. 380, 388, 538 A.2d 66, 70 (1988) (criminal negligence established where appellant drove 85 miles per hour, lost control of his vehicle, and crossed the center line); Cheatham, 419 Pa.Super. at 611-12, 615 A.2d at 806-07 (epileptic was criminally negligent for driving while knowing he was subject to seizures). Accordingly, we find that appellant's sufficiency claim has no merit.

Id. at 823-24.

Under Taylor v. United States, 495 U.S. 575, 600 (1990), we use the "categorical approach" to determine if Francis' conviction for vehicular homicide comes within the meaning of the second part of S 16(b). Drakes v. Zimski, 240 F.3d 246, 249 (3d Cir. 2001) (citing Taylor v. United States, 495 U.S. 575, 600 (1990) and In re Alcantar, 20 I.&N.Dec. 801, 809 (B.I.A. 1994)). Therefore, we must look to Pennsylvania's definition of homicide by vehicle. As noted previously, 18 Pa. C.S.A. S 3732 provides:

Any person who unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3731 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a

14

> misdemeanor of the first degree, when the violation is
> the cause of death.

18 Pa. C.S.A. S 3732. On its face, homicide by vehicle is
certainly not an offense that "by its nature, involves a
substantial risk that physical force against the person or
property of another may be used in the course of
committing the offense." 18 U.S.C. S 16(b). The BIA
acknowledged that S 3732 involves a range of behavior that
"may or may not" fall under S 16(b).

The categorical approach does "permit the sentencing
court to go beyond the mere fact of conviction in a narrow
range of cases where a jury was actually required to find all
the elements of [the relevant] generic [offense]." Taylor, 495
U.S. at 602. Here, the criminal complaint stated:

> Southbound on Route 95 in the vicinity of Comly Street
> the defendant unintentionally caused the death of the
> decedent #1 Harry B. Rutter, Driver of vehicle #1, by
> operating a 1985 Chevrolet Caprice, Pa. License ADB
> 7268, while his operating privilege was suspended, and
> in such a manner as to cause a eight vehicle accident
> between four cars, one van, and three tractor trailers
> and a near miss by a tanker truck carrying 8000
> gallons of gasoline, causing the deaths of two people
> and injuring a third.

AR at 110 (emphasis added).

Francis was therefore charged with the "unintentional"
conduct, of operating an automobile in such a manner as
to cause a car accident resulting in two deaths. The phrase
"while his operating privilege was suspended" is the
attendant circumstance that furnishes the violation of law
that is the condition precedent to criminal culpability. The
BIA, however, reviewed the criminal complaint and found
that driving with a suspended license, could "in and of
itself, present a `substantial risk' that physical force would
be used against the person or property of another." Id. at 6.
Relying on United States v. Galvan-Rodriguez, 169 F.3d
217, 219 (5th Cir. 1999) and Matter of Magallanes, Interim
Decision 3341 at 6-7 (BIA 1998), the BIA reasoned that "a
motor vehicle in the wrong hands has enormous potential
to cause damage to the vehicle and other property, as well

15

as personal injuries and death to innocent people." AR at 6. Further, the BIA reasoned that "the precise risk created by [Francis'] conduct was actually realized in the present case with devastating consequences." AR at 6-7. However, nothing on this record establishes that driving with a suspended license, in and of itself, involves a substantial risk of physical force.

There are undoubtedly many reasons why a state would suspend a person's driving privileges, some of which may have no relation to a person's fitness to drive or the likelihood that he or she will use physical force. See Commonwealth Dept of Transportation v. Empfield, 526 Pa. 220 (1991) (setting forth numerous infractions of the Pennsylvania Vehicle Code that justify suspension of a driver's license including the ministerial act of failing to renew a valid license). Moreover, we find both Galvan–Rodriguez and Matter of Magallanes distinguishable.

Galvan–Rodriguez involved the state offense of unauthorized use of an automobile; a crime that is similar to car theft with all of the attendant dangers of high speed chases, speeding, and recklessness endemic in car theft. Clearly, one who steals a car will be far more likely to operate it recklessly than the car's owner. Matter of Magallanes involved the state offense of aggravated driving under the influence. The dangers of operating an automobile while one's faculties are impaired by drugs or alcohol are all too obvious, and too common to require further elaboration. Significantly, homicide by vehicle is specifically defined to exclude the traffic violation of driving under the influence under 18 Pa. C.S.A. S 3731. Homicide by vehicle, as the Superior Court noted in affirming Francis' conviction, arises from criminally negligent behavior.

In Commonwealth v. Heck 517 Pa. at 201, the Pennsylvania Supreme Court held that ordinary negligence is not sufficient to sustain a conviction of homicide by vehicle under 18 Pa.C.S.A. S 3732. 535 A.2d 575,579 (Pa. 1987). The court found that the government must establish recklessness or criminal negligence. Id. In Pennsylvania, criminal negligence is defined as follows:

> A person acts negligently with respect to a material element of an offense when he should be aware of a

16

substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

Heck, 517 Pa. at 201 (citing 18 Pa. C.S 302(b)(4)) (emphasis added). In contrast, Pennsylvania defines reckless conduct as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa. C.S.A. S 302(b)(3) (emphasis added). The BIA determined that Francis' conduct was reckless. It may well have been. However, recklessness was not charged, and he was not convicted of an offense requiring that mens rea. The criminal complaint alleges only that Francis unintentionally caused the death of two persons by driving a car "while his operating privilege was suspended, and in such a manner as to cause a eight vehicle accident .. ." The complaint expressly uses the term "unintentional[ ]." It did not charge him with recklessness. Given the criminal complaint, and the Superior Court's opinion, it was error for the BIA to conclude that Francis was convicted of recklessness. He was convicted of criminal negligence.

The BIA also discussed our decision in United States v. Parson, 955 F.2d 858 (3d Cir. 1992). The BIA believed that Parson supports the conclusion that homicide by vehicle falls under 18 U.S.C. S 16(b) because Francis was willing to "engage in conduct that carries enormous potential risk that physical force will be used against persons or

17

property." AR at 7. However, in Parsons, we interpreted a provision of the Sentencing Guidelines that is distinguished from S 16(b) despite similar wording. The relevant provision of the Guidelines at issue in Parsons was U.S.S.G. S 4B1.2(1); the Career Offender provision. In deciding that Parsons was a career offender we noted that U.S.S.G. S 4b1.2(ii) included within the definition of"crime of violence" any offense that "involves conduct that presents a serious potential risk of physical injury to another." (Emphasis added). Id. at 867. Thus, to the extent that the discussion there has any relevance to our inquiry here at all, we note our focus there was on conduct. Here, S 16(b) requires that we focus upon the nature of the underlying felony rather than the conduct that caused Francis to be convicted of the felony. Parsons had been convicted of "recklessly endangering" others under state law. We cannot conclude that Francis' crime, involving criminal negligence, so strongly implicates the use of force or risk of force as to sweep Francis' conviction within "crime of violence" here.

Parson's state conviction satisfied the requirement for a career offender because he pled guilty to, and was convicted of, " `conduct that presents a serious risk of physical injury to another' " under Delaware law. Id. at 872 (emphasis added). Though Francis' conduct may well have also posed such a risk, the statute he was convicted under does not, by its nature, require it.12 Any level of negligence poses a risk of some kind of injury. However, as noted above, driving while one's license is suspended simply does not bear a sufficient risk of physical injury to allow us to conclude that the nature of Francis' offense satisfies S 16(b). See United States v. Galo, 239 F.3d 572, 577 (3rd Cir. 2000) ("Under the `categorical approach' the sentencing court can look only to the fact of conviction and the statutory definition of the prior offense. The court's analysis

_____

12. Significantly, to the extent that his level of criminal "negligence" was
so reckless as to be wanton or constitute malice, he could have been charged with third degree murder. See Commonwealth v. Marcelette Miller, 627 A.2d 741 (Pa. Super. 1993). That would have been the kind of offense that, "by its nature" involves the use or substantial risk that force will be used.

18

is not controlled by the conduct giving rise to the
conviction.") (citing Taylor, 495 U.S. at 600-602.).

After considering the text of S 3732, the criminal
complaint, and Pennsylvania precedent together with our
own, we find that Francis' conviction for vehicular homicide
is not an offense that "by its nature, involves a substantial
risk that physical force against the person or property of
another may be used in the course of committing the
offense." 18 U.S.C. S 16(b).

We do not for a moment minimize the tragic
consequences of Francis' conduct nor the loss that he
caused the families of the two people killed by his
negligence. However, the tragic nature of the accident he
caused does not mean that he was convicted for a crime
that, "by its nature, involves a substantial risk that
physical force" will result. See 18 Pa. C.S.A. S 302(4)(d).13

IV. Conclusion

For the reasons set forth above, we hold that Francis has
not committed a "crime of violence" that is a predicate for
"aggravated felony" status pursuant to 8 U.S.C.
SS 1101(a)(43)(F). Therefore, we have jurisdiction over this
petition as Francis is not "removable by reason of having
committed a criminal offense covered in section . . .
1227(a)(2)(A)(iii)," which refers to an alien who is convicted
of an aggravated felony. See 8 U.S.C. 1252(a)(2)(C).
Inasmuch as Francis had not been convicted of an
"aggravated felony" he was not removable as charged by the
INS. Accordingly, Francis' petition for review is granted and
we will remand to the BIA with instructions to vacate its
order of removal.

_____

13. 18 Pa. C.S.A. S 302(4)(d) provides:

    Prescribed culpability requirement applies to all material
elements.
    --When the law defining an offense prescribes the kind of
culpability
        that is sufficient for the commission of an offense, without
        distinguishing among the material elements thereof, such provision
        shall apply to all the material elements of the offense, unless a
        contrary purpose plainly appears.

19

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit