

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-12-2005

# Tran v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 02-3879

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Tran v. Atty Gen USA" (2005). *2005 Decisions.* Paper 773.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/773

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 02-3879

_____

SON DUC TRAN,

*Petitioner*

v.

ALBERTO GONZALES,[*] ATTORNEY GENERAL OF THE
UNITED STATES,

*Respondent*

———

On Petition for Review of Order of the
Board of Immigration Appeals
(Board No. A28-102-920)

———

Argued: April 18, 2004
Before: ROTH, FUENTES, and BECKER, *Circuit Judges.*

(Filed:    July 12, 2005)

RALF D. WIEDEMANN (ARGUED)
Klasko, Rulon, Stock & Seltzer
1800 John F. Kennedy Boulevard

---

[*]Substituted pursuant to Fed. R. App. P. 43(c).

Suite 1700
Philadelphia, PA 19103
     *Attorney for Petitioner*

PETER D. KEISLER
Assistant Attorney General, Civil Division
DONALD E. KEENER
Deputy Director
GREG D. MACK (ARGUED)
Senior Litigation Counsel
LINDA S. WERNERY
JOHN M. McADAMS, JR.
United States Department of Justice
Office of Immigration Litigation
Ben Franklin Station
P.O. Box 878
Washington, DC 20044
     *Attorneys for Respondent*

_____

OPINION OF THE COURT

_____

BECKER, *Circuit Judge*.

     Son Duc Tran petitions for review of an order of the Board of Immigration Appeals (BIA) ordering him deported as an aggravated felon. Tran pled guilty in a Pennsylvania court to the crime of "reckless burning or exploding," which the Board found was a crime of violence under 18 U.S.C. § 16(b), and therefore an aggravated felony supporting removal. Tran argues that, because this crime required only a reckless mens rea, and involved no risk that he would intentionally use force in the commission of the crime, it was not a crime of violence under § 16(b).

     Our review of the language of § 16(b), and of the cases interpreting it, leaves little doubt that a crime whose mens rea is "pure" recklessness is not a crime of violence for immigration purposes. Section 16(b) requires a substantial risk that physical

2

force will be used against the person or property of another. Such a risk is not synonymous with recklessness: the substantial risk required in § 16(b) is a risk of the *use of force*, not a risk of injury to persons or damage to property. As the use of force requires intent, and as Tran ran no risk of intentionally using force in committing his crime, he did not commit a crime of violence under § 16(b). We will therefore grant the petition for review.

## I.

Tran is a native and citizen of Vietnam. He came to the United States as a refugee in February 1989, fleeing mortal danger in his homeland. He became a lawful permanent resident in February 1991, and earned a bachelor's degree from Western Michigan University in 1996, where he remained to pursue a Ph.D. in chemistry. His parents, sisters, and brothers-in-law all live in Michigan, and he does not appear to have any immediate family in Vietnam.

In January of 1997, Tran received a call from a friend, who had saved his life when they were fleeing persecution in Vietnam, asking for his help with an unspecified matter. The friend was in Michigan, and Tran, who also lived in Michigan, was temporarily in Boston at the time. Tran agreed to drive the friend's brother back to Michigan to help the friend. When they arrived in Michigan, the friend told Tran that he had killed another man in a fight over a woman. The Immigration Judge (IJ) describes the events that followed:

> [T]he friend wanted to dispose of the body in [a] way that made it look like the person was killed in an automobile accident. The respondent [Tran] did not want to be involved and said that his only involvement would be to drive the man's brother back to Boston, if that should be necessary. They ended up going in a car and the man's brother drove the car of the victim which had the body in it and set it on fire on the way from Michigan to Boston in Erie, Pennsylvania. The respondent had already gone ahead, not knowing that this is exactly where the body was going to be disposed of and he looked

3

back and saw the car on fire and the brother of the perpetrator running to the respondent's car. They drove on then to Boston.

A few days later, Tran returned to his family in Michigan. The police questioned him about the murder, and he confessed to his involvement. He cooperated fully with the police and testified against his friend in a Michigan murder trial. He was not prosecuted in Michigan, and seems to have been granted immunity in exchange for his testimony.

Some two years later, Tran was told that he was wanted in Pennsylvania on charges related to the destruction of the body. He went to Pennsylvania, was set free on bond, and appeared for court proceedings. In October 1999, he pled guilty to several crimes, including conspiracy to commit reckless burning, and was sentenced to 6 to 24 months imprisonment. He served six months at Waymart State Correctional Institution, and was paroled in mid-2000.

In November 2000, the Immigration and Naturalization Service (INS) issued a Notice to Appear charging Tran with removability as an aggravated felon pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). Tran contested removability and applied for withholding of removal under 8 U.S.C. § 1231(b)(3)(A). He presented letters of support from the Pennsylvania judge who convicted and sentenced him,[1] the superintendent of the prison where he served his sentence, and from clergy, professors, family, and friends.

The IJ found that Tran's crimes did not constitute aggravated felonies under the immigration laws, and therefore held that he was not removable. The government appealed to the Board of Immigration Appeals. The BIA reversed, finding that the IJ had misapplied the law in finding that the conspiracy to commit reckless burning was not an aggravated felony. It also denied

---

[1]That judge, the Honorable Fred P. Anthony of the Court of Common Pleas of Erie County, explained that, in some 29 years on the bench, he had never before written such a letter, as he generally supported deportation in such cases. He felt that Tran's case was unique, and commended Tran's penitence for his crime and his responsible citizenship in other respects.

4

Tran's petition for withholding of removal, finding insufficient evidence that he faced serious risks in returning to Vietnam.

Tran filed a timely petitition for review challenging the BIA's decision that he is an aggravated felon.

## II.

The government contends that Tran is removable under 8 U.S.C. § 1227(a)(2)(A)(iii), which classifies as removable "[a]ny alien who is convicted of an aggravated felony at any time after admission." The term "aggravated felony" is defined by 8 U.S.C. § 1101(a)(43); the term includes "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). The government contends that Tran's Pennsylvania crime was a crime of violence under 18 U.S.C. § 16, and thus qualifies as an aggravated felony.

We have jurisdiction over Tran's petition for review pursuant to 8 U.S.C. § 1252(a)(1). The recent Real ID Act clarifies that our jurisdiction extends to "questions of law raised upon a petition for review," including petitions for review of removal orders based on aggravated felony convictions. *See* Real ID Act § 106(a)(1)(A)(iii), Pub. L. No. 109-13, 119 Stat. 231, 310 (2005), *to be codified at* 8 U.S.C. § 1252(a)(2)(D). We are thus free to consider Tran's purely legal claim that his crime was not, in fact, an aggravated felony under the relevant law. *See Papageorgiou v. Gonzales*, No. 04-3135, — F.3d —, 2005 WL 1490454, *2 (3d Cir. June 24, 2005).[2]

_____

[2]Prior to the Real ID Act, our jurisdiction to review orders of removal for aggravated felonies was limited. The statute granting us jurisdiction to review immigration orders provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii)." 8 U.S.C. § 1252(a)(2)(C) (1999). We did, however, "have jurisdiction to consider our jurisdiction," *Singh v. Ashcroft*, 383 F.3d 144, 150 (3d Cir. 2004), that is, to decide whether the "jurisdictional facts" of § 1252(a)(2)(C) were present, *Drakes v. Zimski*, 240 F.3d 246, 247 (3d Cir. 2001). If we found that the relevant facts—i.e., that the petitioner was an alien and that he

In *Singh v. Ashcroft*, 383 F.3d 144 (3d Cir. 2004), we canvassed our precedents to determine the deference due to the BIA's interpretation and application of the aggravated felony statute. *See* 383 F.3d at 150-152. While there we "expressly reserve[d] decision on whether some BIA interpretations of § 1101(a)(43) are entitled to deference," *id*. at 152, the parties here are in agreement that no deference is due, and that our review is *de novo*. We will conduct such a *de novo* review, mindful that the statute at issue here is not the Immigration and Naturalization Act, but rather the criminal provisions of Title 18 of the United States Code. The interpretation of criminal statutes is a task outside the BIA's special competence and congressional delegation, while it is very much a part of this Court's competence. *See Francis v. Reno*, 269 F.3d 162, 168 (3d Cir. 2001).

III.

Tran pled guilty to three crimes: hindering apprehension, abusing a corpse, and criminal conspiracy to commit reckless burning or exploding.

Hindering apprehension is prohibited by 18 Pa. Cons. Stat. § 5105, which defines the crime to include harboring, concealing, or aiding another person "with intent to hinder the apprehension, prosecution, conviction or punishment of another for [a] crime." The INS argued before the Immigration Judge that this crime constitutes an "offense relating to obstruction of justice," which is an aggravated felony under 8 U.S.C. § 1101(a)(43)(S). The IJ rejected this argument, citing *In re Espinoza*, 22 I. & N. Dec. 889 (BIA 1999), for the proposition that "obstruction of justice" offenses must interfere with ongoing judicial proceedings. The BIA declined to address this issue on appeal, and the government does

_____

had committed an enumerated offense—were present, then we were obligated to dismiss the petition for lack of jurisdiction. If, on the other hand, we found that the underlying crime was not an aggravated felony, we had jurisdiction over the petition. While the statutory mechanism differed, the end result was the same: we are, and were, free to consider a petitioner's *legal* claims that his crime was not an aggravated felony, but we are, and were, without jurisdiction to reconsider the BIA's *factual* findings. *See generally Papageorgiou,* 2005 WL 1490454, at *2.

6

not raise it here.

Similarly, Tran's plea to abusing a corpse, in violation of 18 Pa. Cons. Stat. § 5510, is not before us. The IJ found that it was not an aggravated felony, and the BIA did not disturb this finding on appeal.

The only crime that *is* before us is Tran's conviction for conspiracy to commit reckless burning or exploding. Criminal conspiracy is defined by 18 Pa. Cons. Stat. § 903, a traditional conspiracy statute.[3] Reckless burning or exploding is prohibited by 18 Pa. Cons. Stat. § 3301, a section entitled "Arson and related offenses" and comprising several distinct crimes. The crime to which Tran pled is defined as follows:

> *(d) Reckless burning or exploding.*—A person commits a felony of the third degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and thereby recklessly:
> (1) places an uninhabited building or unoccupied structure of another in danger of damage or destruction; or
> (2) places any personal property of another having a value that exceeds $5,000 or if the property is an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle in danger of damage or destruction.

18 Pa. Cons. Stat. § 3301(d).

The government contends that this definition describes a crime of violence. For federal immigration purposes, a crime of violence is:

---

[3]Conspiracy to commit an aggravated felony is itself an aggravated felony. 8 U.S.C. § 1101(a)(43)(U). We therefore proceed as though Tran had been convicted of the substantive offense of reckless burning, though in fact he pled only to conspiracy to commit that offense.

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another; or
(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

The government, as it must, argues that section 3301(d)(2), on its face, constitutes a crime of violence—not that Tran's conduct, as proved by extrinsic evidence, falls under § 16's strictures. That is because the language of § 16 "requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime." *Leocal v. Ashcroft*, — U.S. —, 125 S. Ct. 377, 381 (2004). We have referred to this requirement as the "formal categorical approach" of *Taylor v. United States*, 495 U.S. 575 (1990). *See Singh*, 383 F.3d at 147.[4]

## IV.

Our question, then, is simply whether the Pennsylvania crime of reckless burning or exploding is categorically a crime of violence under 18 U.S.C. § 16.

### A.

Neither party now contends that reckless burning falls under § 16(a), which requires the "use" of "physical force" against the person or property of another. The reckless burning statute criminalizes the act of intentionally starting a fire with a reckless

___

[4]In *Singh*, we also concluded that the formal categorical approach does not bar us from considering which numbered subsection of a criminal statute the petitioner has violated. *See* 383 F.3d at 162. Thus our inquiry is whether the conduct covered by subsection 3301(d)(2)—intentionally starting a fire, on one's own property or that of another, and thereby recklessly placing certain personal property of another in danger of destruction—is a crime of violence, not whether *any* conduct covered by section 3301 is such a crime. *See also United States v. Remoi*, 404 F.3d 789, 793 (3d Cir. 2005).

mens rea regarding damage to the property of another. 18 Pa. Cons. Stat. § 3301(d)(2). The first element of the crime, intentionally starting a fire on one's own property or that of another, does not in itself necessitate the use of physical force against the property of another.

One might make the argument that *recklessly* damaging (or risking damage to) the property of another, the second element of section 3301, constitutes using force against the property of another, and thus qualifies as a crime of violence under § 16(a). In *Leocal*, *supra*, the Supreme Court reserved judgment on this question, deciding only that "[t]he key phrase in § 16(a)—the 'use . . . of physical force against the person or property of another'—most naturally suggests a higher degree of intent than negligent or merely accidental conduct." 125 S. Ct. at 382. This language leaves open the door for an argument that *reckless* conduct qualifies as the "use of force." But neither the BIA's decision nor the government's argument before us raised this contention—both relied instead on § 16(b)—and we consider it waived.

That said, we must nonetheless address the issue because its resolution is essential to our discussion of § 16(b). Our own Court has stated unequivocally that the "use of physical force" under § 16(a) requires specific intent; recklessness will not suffice. "Use of physical force is an intentional act, and therefore the first prong of [§ 16] requires specific intent to use force." *United States v. Parson*, 955 F.2d 858, 866 (3d Cir. 1992). The BIA held, and the government now argues, that *Parson* is not controlling here because its holding concerned the United States Sentencing Guidelines and not § 16. We acknowledge that other courts have referred to our discussion of § 16 in *Parson* as "dicta," *see United States v. Gonzalez-Lopez*, 335 F.3d 793, 797 (8th Cir. 2003); *Park v. INS*, 252 F.3d 1018, 1023 (9th Cir. 2001). Indeed, our own Court may have implied as much in *Francis v. Reno*, 269 F.3d 162, 173-74 (3d Cir. 2001).

As we explain in the margin, we are not convinced that *Parson*'s interpretation of § 16 is dictum.[5] At all events, we need

_____

[5]The *Parson* panel was ultimately concerned with the interpretation of what is now United States Sentencing Guidelines § 4B1.2(a), but it first dealt with the preliminary question whether that

9

not decide that question, because we are satisfied that *Parson*'s requirement of specific intent under § 16(a) is correct and that "use of physical force is an intentional act." *Parson*, 955 F.2d at 866.

The verb "use" means "[t]o make use of; to convert to one's service; to employ; to avail oneself of; to utilize; to carry out a purpose or action by means of; to put into action or service, especially to attain an end." *Black's Law Dictionary* 1541 (6th ed. 1990). The *Oxford English Dictionary* defines the verb to mean, in its most common usages, "[t]o make use of (some immaterial thing) as a means or instrument; to employ for a certain end or purpose," "[t]o employ or make use of (an article, etc.), esp. for a profitable end or purpose; to utilize, turn to account," or "[t]o work, employ, or manage (an implement, instrument, etc.); to manipulate, operate, or handle, esp. to some useful or desired end." *Oxford English Dictionary* 3574 (compact ed. 1971) (*s.v.* "use, *v.*," definitions 7a, 8a, 9a). These definitions show an obvious commonality: the "use" of force means more than the mere occurrence of force; it requires the intentional employment of that force, generally to obtain some end.

The plain language of the statute therefore compels the conclusion that the "use" of force requires specific intent to employ force, and not mere recklessness as to causing harm. In *United States v. Trinidad-Aquino*, 259 F.3d 1140, 1145 & n.2 (9th Cir. 2001), the Ninth Circuit cited similar definitions of the word "use" to conclude that the word "contain[s] a volitional requirement." It

Guidelines section was a permissible expansion of the statutory definition of a "crime of violence" in § 16. *See* 955 F.2d at 866-67. Our interpretation of § 16 was a prerequisite to our final conclusion that Guidelines § 4B1.2(a) was valid; thus, that interpretation would seem to be part of the holding rather than dictum.

*Francis* did indeed decline to draw conclusions about § 16(b) from our discussion of § 4B1.2(a) in *Parson*, noting that the language of the two provisions differs, and that the Sentencing Guidelines are concerned with conduct rather than with the categorical approach required under § 16(b). While our discussion of the Sentencing Guidelines in *Parson* is irrelevant here, our discussion of § 16(b) was necessary to our holding in Parson and is quite relevant in this case. The fact that *Parson* interpreted § 16 in the Sentencing Guidelines context, while we now interpret it in the immigration context, does not prevent our interpretation of § 16 in that case from binding us now.

thus excluded the possibility of negligent use of force, but nonetheless held that recklessness—that is, "conscious disregard of a risk of a harm that the defendant is aware of," *id*. at 1146—satisfies this volitional requirement.[6] We respectfully disagree. As the Supreme Court said in *Leocal*, "'use' requires *active* employment." 125 S. Ct. at 382 (emphasis added). The active employment of force, generally to achieve some end, corresponds closely to the concept of intent, not recklessness. Intent means a "[a] state of mind in which a person seeks to accomplish a given result through a course of action." *Black's Law Dictionary* 810 (6th ed. 1990). The idea of purposeful action, of actively employing a means to achieve an end, is an essential component of both "use" and "intent," and is absent from the concept of "recklessness." We therefore hold that the "use of force" in § 16(a) requires specific intent to use force.[7]

---

[6]In *United States v. Nason*, 269 F.3d 10 (1st Cir. 2001), the First Circuit considered the import of an analogous provision, 18 U.S.C. § 922(g)(8)(C)(ii), which also implicated the "use of physical force." Nason had been convicted of assault under Maine law, defined as "intentionally, knowingly, *or recklessly* caus[ing] bodily injury or offensive physical contact to another." Me. Rev. Stat. Ann. tit. 17-A, § 207(1) (emphasis added). The First Circuit declared that this legislation "unambiguously involves the use of physical force." *Nason*, 269 F.3d at 20. While that Court's ruminations are less than pellucid, we conjecture that it reached its determination based not on a linguistic dissection of the statute but on a Maine Supreme Court opinion glossing it to require "use of unlawful force against another causing bodily injury." *Id*. (quoting *State v. Griffin*, 459 A.2d 1086, 1091 (Me. 1983)). At all events, to the extent that the First Circuit's conclusion is coterminous with the Ninth Circuit's decision that recklessness can suffice for the use of force, we (again) disagree.

[7]This conclusion is buttressed by the fact that § 16(a) covers not merely the use of physical force, but also the attempted or threatened use of such force. As we recently stated, in discussing a New York common-law attempt crime, "the concept of an attempted recklessness crime is nonsensical." *Knapik v. Ashcroft*, 384 F.3d 84, 91 (3d Cir. 2004). If one can attempt to use force, it stands to reason that the use of force requires something more than mere recklessness.

B.

Once we conclude that the "use of physical force" in § 16(a) requires specific intent, our interpretation of § 16(b) is determined by the language of the statute and by our precedents. Section 16(b) covers any felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Given the definition of use of physical force reached above, we can only conclude that § 16(b) crimes are those raising a substantial risk that the actor will *intentionally* use force in the furtherance of the offense.

*Parson* is explicit on this point:

> Use of physical force is an intentional act, and therefore [§ 16(a)] requires specific intent to use force. As to [§ 16(b)], a defendant's commission of a crime that, by its nature, is likely to require force similarly suggests a willingness to risk having to commit a crime of specific intent. For example, a burglar of a dwelling risks having to use force if the occupants are home and hear the burglar. In such a case, the burglar has a mens rea legally nearly as bad as a specific intent to use force, for he or she recklessly risks having to commit a specific intent crime.

955 F.2d at 866. In *Parson*, we went on to contrast the requirement of § 16(b), in which the actor runs a risk of intentionally using force, with the lower mens rea that we characterized as "'pure' recklessness." *Id*. We noted that crimes like reckless endangering and drunk driving, though they involve a serious risk of injuring others, do not involve any risk of intentional harm or use of force. *Id*.[8]

_____

[8]The government cites dicta in *Francis v. Reno*, 269 F.3d 162 (3d Cir. 2001), to support the proposition that recklessness may suffice for a § 16(b) crime. In *Francis* we held that a Pennsylvania conviction for vehicular homicide, a misdemeanor requiring a mens rea of criminal negligence, did not constitute a crime of violence under § 16(b). We noted there that, although the Pennsylvania courts had specifically held that Francis's crime required only negligence, the BIA had found that he

Our conclusion in *Parson* gains support from the Supreme Court's recent decision in *Leocal*. The Court discussed § 16(b) in terms that echo our discussion in *Parson*:

> [Section 16(b)] simply covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense. The reckless disregard in § 16 relates not to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime. The classic example is burglary. A burglary would be covered under § 16(b) not because the offense can be committed in a generally reckless way or because someone may be injured, but because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime.

125 S. Ct. at 382-383 (footnote omitted). In a footnote, the Court was even more explicit that "[t]he 'substantial risk' in § 16(b) relates to the use of force, not to the possible effect of a person's conduct," and drew the same distinction that we did in *Parson* between the risk of *use of force* in § 16(b) and the distinct risk of *injury* in United States Sentencing Guidelines § 4B1.2(a)(2).

---

acted recklessly. 269 F.3d at 173. This, we held, was error: the BIA should have applied the categorical approach, and considered only Francis's crime of conviction (negligence) rather than its own view of his underlying conduct (recklessness). We stated that "recklessness was not charged, and [Francis] was not convicted of an offense requiring that mens rea." *Id.*

We do not take this language to decide that recklessness would suffice for a § 16(b) crime; indeed, given the precedent of *Parson*, the *Francis* panel was foreclosed from so deciding. Instead, this language from *Francis* indicates only that the BIA erred in failing to follow the categorical approach, and that the proper question was whether Francis's negligence constituted a crime of violence under § 16(b). Of course, we held, it did not. *Id.* at 174-75.

*Leocal*, 125 S. Ct. at 383 n.7; *see also Parson*, 955 F.2d at 866.

Three other Courts of Appeals have followed the approach of *Parson*, which we reaffirm today. *See Jobson v. Ashcroft*, 326 F.3d 367, 372-73 (2d Cir. 2003); *United States v. Chapa-Garza*, 243 F.3d 921, 925-27 (5th Cir. 2001); *Bazan-Reyes v. INS*, 256 F.3d 600, 610-11 (7th Cir. 2001). Four others have not required specific intent to qualify as a § 16(b) crime of violence. *See Omar v. INS*, 298 F.3d 710, 715-16 (8th Cir. 2002); *Park*, 252 F.3d at 1023-24; *Tapia Garcia v. INS*, 237 F.3d 1216, 1222 (10th Cir. 2001); *Le v. United States Attorney General*, 196 F.3d 1352, 1354 (11th Cir. 1999). The approaches of the Eighth, Tenth, and Eleventh Circuits did not require even a reckless mens rea to meet the § 16(b) standard, and thus have been abrogated, at least to that extent, by *Leocal. Compare Leocal*, 125 S. Ct. at 382-83, *with Omar*, 298 F.3d at 715-16, *Tapia Garcia*, 237 F.3d at 1222, *and Le*, 196 F.3d at 1354. The Ninth Circuit's approach relies on its holding that the "use of force" requirement of § 16(a) may be satisfied by a reckless mens rea, *see Park*, 252 F.3d at 1024; we have rejected this conclusion both in *Parson*, 955 F.2d at 866, and at greater length in Part IV.A, *supra*.

We thus conclude, following *Parson* and *Leocal*, that a crime of violence under § 16(b) must involve a substantial risk that the actor will intentionally use physical force in committing his crime.

## C.

It remains for us to decide whether Tran's crime of conviction, on its face, involves such a risk of intentionally using force in the commission of the crime. We hold that it does not.

Tran intentionally started a fire, but of course starting a fire is not in itself a crime, much less a crime of violence. The second, dispositive element of his crime is the reckless endangering of the property of another. This element, on its face, involves a substantial risk of causing injury to the property of another. But it does not involve a substantial risk of *using force* against the property of another. The substantial risk involved in the Pennsylvania statute is the risk that the fire started by the offender will spread and damage the property of another. This risk cannot be said to involve the intentional use of force, as required by *Parson*. The statute does not contemplate a risk that the reckless-burning offender will step

14

in and commit an *intentional* act of violence; instead, the only risk is that his initial reckless act will cause further damage.

Tran's counsel cites several examples of actions that might qualify as reckless burning or exploding under Pennsylvania law. "A person setting fire to a pile of leaves in his or her yard, placed close to a neighbor's car" would qualify, as would one who "set[s] off firecrackers or sparklers near a gas station." Such reckless actions are likely to cause harm in many cases, and Pennsylvania certainly has an interest in punishing them. But they are not the kind of "violent, active crimes," *Leocal*, 125 S. Ct. at 383, that qualify as crimes of violence under § 16. Needless to say, the facts of this case are very different from these hypotheticals. But we reiterate that we are limited to deciding whether Tran's crime of conviction is a crime of violence on its face, not whether his conduct was in fact violent. *See Leocal*, 125 S. Ct. at 381.

The government, like the BIA, relies on the BIA precedent of *In re Palacios*, 22 I. & N. Dec. 434 (BIA 1998), which held that first-degree arson under Alaska law constituted a crime of violence under § 16(b). The Alaska statute criminalized *intentional* damage to property by fire that recklessly places another person in danger of serious physical injury. *See* 22 I. & N. Dec. at 435. The BIA held that "arson in the first degree, by its very nature, requires a substantial risk of physical force against another person or property." *Id.* at 437. But its analysis was limited to its conclusion that

> the intentional starting of a fire or causing an explosion ordinarily would lead to the substantial risk of damaging property of another. Not only is there a risk to items belonging to others that are on or in the property, i.e., such as items left in a store, there always exists the risk that the fire will spread beyond the original intended property.

*Id.*

Thus the BIA did not conduct the inquiry, mandated by *Parson* and *Leocal*, into whether the Alaska arson statute necessarily involved a substantial risk of *using force*. Instead, it merely assumed that a substantial risk of *damaging property* satisfied the requirements of § 16(b). In our Circuit, that

15

assumption was foreclosed by *Parson*; it has now been foreclosed nationally by *Leocal*. While we express no opinion on whether the Alaska arson statute in *Palacios* defines a crime of violence under § 16, we think it clear that the analysis of *Palacios* must now be considered to have been in error, and that it does not control this case. Morever, even were its analysis correct, *Palacios* is clearly distinguishable: the Alaska statute in *Palacios* required intentionally causing damage to property, and thus contained a specific intent element lacking in the Pennsylvania statute here.

Thus, Tran's crime—the Pennsylvania offense of reckless burning or exploding—involved neither the use of force nor a substantial risk that he might use force. He therefore did not commit a crime of violence under § 16. Accordingly, we will grant the petition for review and remand to the BIA for further proceedings consistent with this opinion.