Nazir Ahmad **POPAL**, Petitioner

v.

Alberto **GONZALES**,* Attorney General of the United States; Bureau of Immigration & Customs Enforcement, Respondents.

No. 04–2048.

United States Court of Appeals, Third Circuit.

Argued June 7, 2005.

Filed July 29, 2005.

---

* Substituted pursuant to Fed. R.App. P. 43(c).

Matthew D. Baxter (Argued), Bespalov & Gross, P.C., Huntingdon Valley, PA, Daniel M. Pell, York, PA, for Petitioner.

Peter D. Keisler, Assistant Attorney General, Civil Division, Terri J. Scadron, Assistant Director, Hillel R. Smith (Argued), United States Department of Justice, Office of Immigration Litigation, Ben Franklin Station, Washington, DC, for Respondents.

Before FUENTES, VAN ANTWERPEN, and BECKER, Circuit Judges.

BECKER, Circuit Judge.

Nazir Ahmad Popal petitions for review of an order of the Board of Immigration Appeals (BIA) ordering him deported as an aggravated felon. The government maintains that Popal's crime of conviction, Pennsylvania simple assault, is a crime of violence under 18 U.S.C. § 16(a) and therefore renders him removable. We have recently held that crimes with a *mens rea* of recklessness do not constitute crimes of violence. *Tran v. Gonzales,* 414 F.3d 464, 2005 WL 1620320 (3d Cir. July 12, 2005). As Popal's crime was a recklessness offense, he is not removable as an aggravated felon. We also reject the government's jurisdictional argument that Popal, who has fully litigated his claim before the Immigration Judge and the BIA, has somehow failed to exhaust his administrative remedies. We will therefore grant the petition for review.

### I.

Popal was born in Afghanistan in June 1981, and arrived in the United States as a refugee in June 1987. He became a lawful permanent resident in 1989, but remains a citizen of Afghanistan. In June 2002, he was convicted of simple assault, a misdemeanor, in the Court of Common Pleas of Berks County, Pennsylvania. He was sentenced to four to twenty-three months' imprisonment.

The Department of Homeland Security (DHS) served Popal with a Notice to Appear, alleging that he was removable as an aggravated felon because his assault was a crime of violence. He appeared before an Immigration Judge (IJ), who terminated the removal proceedings, finding that Pennsylvania simple assault is not a crime of violence. DHS appealed to the BIA, which reversed, holding that simple assault

does in fact constitute a crime of violence, and that Popal is therefore removable. The BIA remanded the record to the IJ "to allow [Popal] to apply for any relief from removal for which he may be eligible."

Popal had never made any application for relief from removal, beyond pressing the argument that his crime was not an aggravated felony. The IJ was thus understandably puzzled by the BIA's order of remand. He wrote:

> On February 25, 2004, the Board remanded the record, sustaining the Bureau's appeal by finding that respondent's misdemeanor conviction in Pennsylvania constituted an aggravated felony "crime of violence".... However, rather than issuing a removal order, the Board remanded the record "for further proceedings." Since there had been no other issues before the Board, one must wonder why the Board remanded the record.

At all events, the IJ offered Popal an opportunity to apply for withholding of removal pursuant to 8 U.S.C. § 1231(b)(3), or for protection under the Convention Against Torture. Popal declined this opportunity and asked the IJ to issue a final order of removal. The IJ obliged, entering an opinion entitled "Final Administrative Order of Removal" and explicitly stating that "the following order is the final administrative order in this case." Upon receipt of this order, Popal timely petitioned this Court for review.

### II.

We have jurisdiction over Popal's petition for review pursuant to 8 U.S.C. § 1252(a)(1). Under the recently enacted REAL ID Act, our jurisdiction extends to "questions of law raised upon a petition for review," including petitions for review of removal orders based on aggravated felony convictions. *See* REAL ID Act § 106(a)(1)(A)(iii), Pub.L. No. 109–13, 119

Stat. 231, 310 (2005), *to be codified at* 8 U.S.C. § 1252(a)(2)(D); *see also Papageorgiou v. Gonzales,* 413 F.3d 356, 358, 2005 WL 1490454, *2 (3d Cir. June 24, 2005). Prior to the REAL ID Act, our jurisdiction to review orders of removal for aggravated felonies was more limited, but even then we had jurisdiction to determine whether a petitioner's crime was in fact an aggravated felony. *Drakes v. Zimski,* 240 F.3d 246, 247 (3d Cir.2001); *Papageorgiou,* 413 F.3d at 358, 2005 WL 1490454 at *2.

The government argues, however, that we lack jurisdiction because Popal has failed to exhaust his administrative remedies. The argument is that, as Popal failed to appeal the IJ's *second,* final order to the BIA, he failed to exhaust all administrative remedies that were available to him. *See* 8 U.S.C. § 1252(d) ("A court may review a final order of removal only if—(1) the alien has exhausted all administrative remedies available to the alien as of right. . . .").[1]

▮ In general, this requirement means that an alien who does not appeal an IJ's order to the BIA cannot challenge that order in a petition for review. *See, e.g., Yi v. Maugans,* 24 F.3d 500, 503–04 (3d Cir.1994); *Alleyne v. INS,* 879 F.2d 1177, 1182 (3d Cir.1989). Popal sensibly argues that these cases are inapplicable, because the BIA had already considered his claim in reversing the IJ's initial decision to terminate removal proceedings. Because the BIA fully considered the only issue that Popal has ever raised—before the IJ, before the BIA, or in his petition for review—it would be absurd to expect him to appeal the IJ's decision for a second round of BIA review.

▮ The government reads this argument as one of futility, and contends that futility is generally no defense to the failure to exhaust. *See Theodoropoulos v. INS,* 358 F.3d 162, 172–73 (2d Cir.2004). We agree that the exhaustion requirement of 8 U.S.C. § 1252(d) is jurisdictional, and that there is no general futility exception. *Duvall v. Elwood,* 336 F.3d 228, 234 (3d Cir.2003).[2] Indeed, the fact that the BIA has considered and rejected the petitioner's argument in *another* case will not normally excuse a petitioner's failure to

---

1. The government makes a related argument that the IJ's order does not constitute a final order of removal. *See* 8 U.S.C. § 1252(a)(1) (granting the courts jurisdiction to review only final orders of removal); 8 U.S.C. § 1101(a)(47)(B) ("The order [of removal issued by the IJ] shall become final upon the earlier of—(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals.").

The government is plainly wrong that an IJ's order can *never* constitute a final order of removal. The statutory language provides that an IJ's order may become final *either* upon affirmance by the BIA *or* upon expiration of the period for review—although, in the ordinary case, an order that becomes final via the latter method will be unreviewable for failure to exhaust. The IJ's decision here was entered on March 18, 2004, and the period

for seeking review thus expired on April 17, 2004. *See* 8 C.F.R. § 1003.38(b). Popal filed his petition for review on April 16, 2004—one day before the IJ's decision would have become final under § 1101(a)(47)(B).

But the regulations provide that "the decision of the Immigration Judge becomes final *upon waiver of appeal* or upon expiration of the time to appeal if no appeal is taken whichever occurs first." 8 C.F.R. § 1003.39 (emphasis added). On March 17, 2004, Popal's attorney wrote to the IJ noting his "acquiescence in a removal order," and requesting a "final agency action." He also stated that he "intend[ed] federal court action" immediately upon entry of the IJ's order. We read this as a plain waiver of appeal to the BIA, and therefore find that the IJ's second order was in fact a final order the day it was entered.

2. On the other hand, the duty to exhaust extends only to those administrative remedies available to the alien as of right. Where the

raise it in his own appeal to the BIA. *See Sousa v. INS,* 226 F.3d 28, 32 (1st Cir. 2000) ("[M]erely because the agency has previously rejected an argument is no basis for failing to make the claim in one's own case."). An alien must exhaust all administrative remedies available to him, even if he reasonably predicts that these remedies are unlikely to do him any good.

But Popal's argument is not based on a prediction of futility. Instead, he contends that he did in fact exhaust all remedies available to him: the BIA considered all of his arguments against removal when it heard DHS's appeal of the IJ's original order. The IJ's second order was not a separate decision that could be appealed to the BIA. It was a mere ministerial act, taken to effectuate the unmistakable judgment of the BIA as indicated by its decision granting DHS's appeal.

We agree with Popal. The IJ's "final administrative order" made no new findings of fact or conclusions of law, and considered no issues that had not been decided by the BIA. Instead, it simply implemented the BIA's decision. Normally, the BIA itself would have entered an order of removal in these circumstances, but here the Board remanded to the IJ "to allow the respondent to apply for any relief from removal for which he may be eligible." As Popal did not apply for any such relief, he is now in effect petitioning for review of the BIA's decision finding him removable.

None of the purposes of exhaustion would be served by a further appeal to the BIA. The issues have been fairly presented to, and fully adjudicated by, the BIA.

There are no factual allegations or legal arguments before us that were not raised before the BIA. Judicial economy would not be served by requiring Popal to take a second, essentially frivolous appeal to the BIA raising the same issues that the Board had already rejected in Popal's own case. Nor would the congressional purpose of preventing unjustified delay in removal cases, *see Massieu v. Reno,* 91 F.3d 416, 421–22 (3d Cir.1996), be advanced by interposing a second and wholly repetitive appeal to the BIA.

█ We therefore hold that, where a petitioner has raised only one claim before the IJ and the BIA, and where that claim has been fully and fairly litigated by the petitioner before the IJ and the BIA, the petitioner has exhausted that claim under 8 U.S.C. § 1252(d) and may present it to this Court. No one contests that Popal's claim has been fully litigated before the BIA, and we therefore conclude that we have jurisdiction to consider it.

## III.

Popal pled guilty in a Pennsylvania court to misdemeanor simple assault. The Pennsylvania statute provides that "[a] person is guilty of assault if he: (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another . . . ." 18 Pa. Cons.Stat. § 2701(a).

█ The BIA held, and the government now contends, that Popal is a removable aggravated felon because he has committed a "crime of violence" under 18 U.S.C. § 16.[3] That provision, in turn, defines a "crime of violence" to mean one of two things:

---

alien's claim is not within the jurisdiction of the BIA, or where the agency is incapable of granting the remedy sought, there can be no duty to exhaust. *Bonhometre v. Gonzales,* 414 F.3d 442, 447–48, 2005 WL 1653641, *3 (3rd Cir. July 15, 2005); *see also Theodoropoulos,* 358 F.3d at 173 (suggesting an exception to

the exhaustion requirement where "there is no possibility of receiving any type of relief" from further administrative proceedings).

3. Under 8 U.S.C. § 1227(a)(2)(A)(iii), "[a]ny alien who is convicted of an aggravated felony at any time after admission" is removable.

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* The BIA found that Popal's crime, simple assault, satisfied § 16(a) in that it involved the use of physical force.

In finding that simple assault constitutes a crime of violence, the BIA necessarily considered only the elements of the crime, and not Popal's particular conduct, as § 16 "requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime." *Leocal v. Ashcroft,* —— U.S. ——, ——, 125 S.Ct. 377, 381, 160 L.Ed.2d 271 (2004). In particular, the BIA was not entitled to assume that Popal

acted with any *mens rea* greater than recklessness, the minimum culpability required for a conviction under 18 Pa. Cons. Stat. § 2701(a).[4]

It is now settled law in this Circuit that an offender has committed a "crime of violence" under 18 U.S.C. § 16(a) only if he acted with an intent to use force. We first stated as much in *United States v. Parson,* 955 F.2d 858, 866 (3d Cir.1992). In *Leocal,* 125 S.Ct. at 382, the Supreme Court held, in language echoing *Parson,* that the term "use of force" in § 16 required, at the least, a *mens rea* greater than negligence. Most recently and explicitly, we reaffirmed *Parson* in *Tran v. Gonzales,* No. 414 F.3d 464, 2005 WL 1620320 (3d Cir. July 12, 2005). There, we clearly held "that the 'use of force' in § 16(a) requires specific intent to use force." *Id.* at 471, 2005 WL 1620320, at *5.

Because Pennsylvania simple assault requires a *mens rea* of recklessness, rather than intent, it is not a crime of violence under § 16(a).[5] Because it is not a felony

---

"Aggravated felonies" include, among other crimes, "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). Under this provision, an "aggravated felony" need not be classified as a felony by the jurisdiction of conviction, so long as its term of imprisonment is at least one year.

Popal's sentence of four to twenty-three months satisfies the one-year imprisonment requirement of § 1101(a)(43)(F). This sentence was functionally the same as a sentence of twenty-three months, with parole eligibility beginning after four months. *See Bovkun v. Ashcroft,* 283 F.3d 166, 171 (3d Cir.2002).

4. Furthermore, even were we to look at the factual record in Popal's case, *see Singh v. Ashcroft,* 383 F.3d 144, 162–63 (3d Cir.2004), we would not be able to conclude that he acted with intent. The police complaint merely reiterates the generic definition of the crime, without specifying whether Popal acted intentionally, knowingly, or recklessly. The complaint does specify that Popal shot a

minor with a compressed air pistol, and the affidavit of probable cause describes the events in more detail, but neither states that Popal was charged with acting with intent. The record contains no plea document, plea colloquy, judgment of conviction, or other proof of what facts Popal admitted in pleading guilty to simple assault.

5. We acknowledge that the legislative history of § 16(a) provides some support for the government's theory that that section encompasses simple assault. *See* S.Rep. No. 98–225, at 307 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3487 ("The former category [§ 16(a)] would include a threatened or attempted simple assault or battery on another person...."). Nonetheless, we do not think that this legislative history undermines our conclusion. Instead, we think it likely that, when the drafters of § 16 mentioned simple assault as an exemplary crime of violence, they had in mind traditional common-law simple assault, defined as a crime "committed by either a willful attempt to inflict injury upon the person of another, or by a threat to inflict

under state law, *see Francis v. Reno*, 269 F.3d 162, 167–71 (3d Cir.2001), and because there is no allegation that it involves "a substantial risk that the actor will intentionally use physical force in committing his crime," *Tran*, 414 F.3d at 472, 2005 WL 1620320, at *7, it is not a crime of violence under § 16(b). There is thus no basis for removability, and the petition for review must be granted.

would render him removable. We will therefore grant the petition for review and remand to the BIA for further proceedings consistent with this opinion.[6]

## . IV.

On the record before us, Popal has not committed an aggravated felony that

injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *United States v. McCulligan*, 256 F.3d 97, 103 (3d Cir.2001) (quoting *United States v. Chestaro*, 197 F.3d 600, 605 (2d Cir.1999)). The common law thus required "willfulness," i.e., intent, in order to find a defendant guilty of simple assault. It is entirely plausible that this definition might have been Congress's referent in discussing § 16(a). Indeed, we have held that the term "simple assault" used in the federal assault statute, 18 U.S.C. § 111, was meant to "equate[ ] with traditional common-law assault." *McCulligan*, 256 F.3d at 104.

If the legislative history cited above means only that Congress intended to include common-law simple assault as a crime of violence, then we cannot infer that it intended to include Pennsylvania simple assault, which does not require willful conduct. The fact that some states have a broader definition of simple assault does not mean that Congress wanted to sweep all crimes so denominated into the category of aggravated felonies.

Indeed, it cannot be true that any crime called "simple assault" by any state constitutes a crime of violence under § 16(a). The statute at issue in this case affords a clear example. As described above, Pennsylvania defines simple assault to include recklessly causing bodily injury. 18 Pa. Cons.Stat. § 2701(a)(1). But it also classifies as simple assault "negligently caus[ing] bodily injury to another with a deadly weapon." · *Id.*

§ 2701(a)(2). The Supreme Court has held that negligence offenses are not crimes of violence under § 16. *Leocal*, 125 S.Ct. at 382. The mere labeling of negligent conduct as "simple assault" does not *ipso facto* transform it into an aggravated felony.

Similarly, in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court rejected the proposition that the term "burglary" in 18 U.S.C. § 924(e)(2)(B)(ii) means whatever any state chooses to classify as burglary; instead, the Court crafted a uniform "generic" definition of the offense for federal sentencing purposes. While the *Taylor* Court was considering statutory language rather than legislative history, its emphasis on uniformity informs our own conclusion that Congress's reference to "simple assault" was not meant to encompass *any* crime so defined by a state legislature.

In short, we recognize that our holding today might seem to conflict with Congress's intent as expressed in the legislative history of § 16. But we believe that this apparent conflict is a mirage, caused by the fact that Pennsylvania has chosen to classify as simple assault offenses that the congressional drafters were unlikely to have had in mind.

6. Our Order reflects that the final administrative order in this case was that of the Immigration Judge, and it is this order that we vacate. As is our normal practice, however, we will remand to the BIA for further proceedings.