

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-9-2007

# Ferguson v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4368

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Ferguson v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1639.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1639

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 05-4368

_____


MARK FERGUSON,
                                                Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                Respondent

_____

On Petition for Review of the Order
of the Board of Immigration Appeals
(BIA No. A17-514-486)
Immigration Judge:  Hon. Annie S. Garcy

_____

Submitted Under Third Circuit LAR 34.1(a)
January 19, 2007

Before: SLOVITER, RENDELL, and CUDAHY,[*] Circuit Judges

(Filed  February 9, 2007)

OPINION

_____

CUDAHY, Circuit Judge.

        Mark Ferguson petitions for review of a final order removing him from the country.  He

argues that in denying him discretionary cancellation of removal the Board of Immigration

Appeals (BIA or Board) improperly disobeyed its own precedents and regulations.  Because

_____

        [*]  Hon. Richard D. Cudahy, United States Senior Circuit Judge
        for the United States Court of Appeals for the Seventh Circuit, sitting by
        designation.

Ferguson's claims are without merit, we affirm.

Because we write primarily for the parties, who are already familiar with the circumstances of this case, we recite only those facts that are necessary to our decision. Ferguson, a citizen of the United Kingdom, is a lawful permanent resident of the United States and has lived here since he was three. He suffers from a psychological compulsion to moon women in public. The activity does not bring him sexual pleasure. He testifies that he has historically bared his butt at a woman about once every six months, and that he has been arrested for this activity thirteen times and convicted three times. He is currently undergoing therapy with Dr. Melvin Rand, a psychiatrist and a specialist in the recidivism of sexual offenders.

The Department of Homeland Security (DHS) commenced removal proceedings against Ferguson based on his 2002 conviction in New Jersey of "lewdness," N.J. Stat. Ann. § 14-4a, which the DHS contended was a "crime involving moral turpitude," Immigration and Nationality Act (INA) § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1227(a)(2)(A)(i)(I). Ferguson's only argument relevant to this appeal was that he should be granted discretionary cancellation of removal. INA § 240A(a), 8 U.S.C. § 1229B(a). He argued that removal would impose unusual hardship on his family (he is unusually involved in caring for the parentless children of his dead sister), and that there was an unusually low chance that he would reoffend. Ferguson testified that he had not mooned anyone in the two years since he began therapy with Dr. Rand, and Dr. Rand offered expert testimony that tests showed Ferguson had an relatively low likelihood of recidivism. He opined that with further treatment, Ferguson could be completely cured of his odd compulsion.

The ALJ, acknowledging the case to be a close one, relied heavily on the predictions of Dr. Rand in exercising her discretion to cancel Ferguson's removal. (App. 47-50.) The DHS

appealed and the BIA reversed. The BIA acknowledged that Ferguson's family ties and long residence in the United States were "significant," but concluded that those factors were "outweighed by the seriousness, frequency, and recency of the respondent's criminal conduct." (App. at 1-2.) It acknowledged Dr. Rand's testimony, but noted both that Rand admitted his predictions could be inaccurate if he was unaware of additional mooning incidents beyond those to which Ferguson had admitted, and that at any rate despite Ferguson's improvement he still posed some risk of recidivism, and indeed had committed the 2002 offense while on probation from a previous offense. (App. at 2-3.) One board member dissented, stressing that all of Ferguson's offenses were very brief and involved mooning adult women. (App. at 3.)

The Board remanded the case to an ALJ, which entered a final order of removal. Ferguson now petitions for review of that order, arguing that in denying him cancellation of removal the BIA improperly disobeyed legal rules governing cancellation established in *Dia v. Ashcroft,* 353 F.3d 228 (3d Cir. 2003) and the BIA precedent *In re Sotelo-Sotelo*, 23 I. & N. Dec. 201 (BIA 2001), in consequence violating the BIA's internal regulation requiring treatment of its own decisions as precedent, 8 C.F.R. § 1003.1(g).

The government raises two objections to our jurisdiction in this case. First, it argues that Ferguson did not appeal his final order of removal to the BIA and consequently failed to exhaust his administrative remedies as required by INA § 142(d)(1), 8 U.S.C. § 1252(d)(1). However, the final order was entered on remand from a BIA decision that had already conclusively determined the issues on which Ferguson seeks review, the legal standards governing cancellation of removal. In such a situation it would be "absurd" to expect the alien to appeal the post-remand order to the BIA, and Ferguson did not need to do so in order to exhaust his

3

administrative remedies. *Popal v. Gonzales*, 416 F.3d 249, 252-53 (3d Cir. 2005).

Second, the government argues that we presumptively lack jurisdiction to hear Ferguson's claims because he seeks review of an exercise of discretion regarding the grant of cancellation of removal under § 1229b. INA § 142(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i); *Mendez-Moranchel v. Ashcroft*, 338 F.3d 176 (3d Cir. 2003) (holding that courts of appeals are denied jurisdiction over discretionary aspects of such decisions). However, under the REAL ID Act nothing in the INA can deprive us of jurisdiction to review constitutional claims or questions of law. *Id.* § 1252(a)(2)(D). Consequently, while we generally lack jurisdiction to evaluate the BIA's exercise of its discretion, we retain jurisdiction to evaluate any potential ways in which the BIA has violated a rule of law or a provision of the U.S. Constitution in exercising its discretion. *Chen v. Dep't of Justice*, 471 F.3d 315, 329 (2d Cir. 2006) (holding that a petition raises a question of law when it alleges a "fact-finding which is flawed by an error of law" or an "abuse of discretion" that is "based on an legally erroneous standard"). In the present case, Ferguson alleges that the BIA's factfinding and exercise of discretion violated the Constitution and were conducted in violation of legal standards set forth in statutes and regulations. We have jurisdiction to review these claims. *Id.* at 327, *citing Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (holding that a reviewable legal standard can be set forth in an agency regulation).

The problem with Ferguson's claims is not that they lie outside our appellate jurisdiction, but that they are entirely without merit. The INA commits cancellation of removal for certain kinds of permanent residents to the discretion of the immigration authorities. INA § 240A(a), 8 U.S.C. § 1229B(a). The BIA has decided that the Immigration judge "must balance the adverse factors evidencing the alien's undesirability as a permanent resident with the social and humane

4

considerations presented in his (or her) behalf" to determine whether cancelling removal would be in the best interests of the United States. *In re C-V-T-*, 22 I. & N. Dec. 7, 11 (BIA 1998). Among the favorable factors that can be considered are family ties, long residence in the United States, hardship that will befall the respondent and her family in the event of removal, and proof of genuine criminal rehabilitation. *Id.*

Ferguson first asserts that the BIA improperly required "unusual or outstanding equities" of him before applying a generalized "balancing test to consider whether a favorable exercise of discretion is warranted" in his case. *In re Sotelo-Sotelo*, 23 I. & N. Dec. 201 (BIA 2001). He notes that while the BIA found he had "considerable equities" they were nonetheless outweighed by the "seriousness, frequency, and recency" of his criminal conduct. But rather than showing that the BIA failed to apply a balancing test to his case, these passages from the BIA opinion *are* the application of a balancing test: the BIA balanced Ferguson's equities against his criminal conduct and found that the latter outweighed the former. Ferguson's claim that the BIA "in effect" denied a balancing test by affording insufficient weight to Dr. Rand's testimony is simply an attack on the BIA's factfinding and exercise of its discretion, which we lack power to review.

Ferguson's other claim is that the BIA "improperly substituted its opinion regarding the seriousness of the . . . . criminal offenses" for Rand's, in violation of a purported rule that the BIA cannot choose to disbelieve uncontradicted expert testimony. This claim fails on multiple levels. First of all, the case that Ferguson cites for the proposition that the BIA can never disbelieve uncontroverted expert testimony establishes no such legal rule. In that case we simply concluded that the BIA's decision to disbelieve the expert was not supported by substantial evidence in the record, factual review that we lack jurisdiction to perform in this context. *Dia v.*

5

*Ashcroft*, 353 F.3d 228, 259 (3d Cir. 2003). Furthermore, even if there were such a rule, the BIA did not simply disregard Dr. Rand's testimony, but merely noted its limitations. Rand admitted that his predictions as to the likelihood of Ferguson's recidivism were potentially inaccurate if made without a full knowledge of his mooning history, and even if they were accurate Ferguson still showed some risk of recidivism, about a 35 percent chance of reoffending within five years. (App. at 41.) The BIA's decision that this risk outweighed Ferguson's equities did not contradict Rand's testimony; it was a discretionary exercise in valuing the policy importance of the risks Rand predicted, which we lack jurisdiction to review.

Ferguson also alleges that these two aspects of the BIA decision violated the Constitution, but he offers no explanation why; consequently the constitutional claims are forfeited. Having determined that none of Ferguson's allegations hold water, and being without any power to reexamine the BIA's determination that cancellation of Ferguson's removal would be in the best interests of the country, we deny the petition for review.