**Neim PASHO; Florika Pasho, Petitioners**

v.

**ATTORNEY GENERAL OF the UNITED STATES.**

No. 08–1702.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) July 8, 2009.

Opinion filed: July 8, 2009.

---

Sokol Braha, Esq., New York, NY, for Petitioners.

Richard M. Evans, Esq., Justin R. Markel, Esq., Joan E. Smiley, Esq., United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before: BARRY, SMITH and HARDIMAN, Circuit Judges.

## OPINION

PER CURIAM.

Petitioners, natives and citizens of Albania, seek review of a final order issued by the Board of Immigration Appeals ("BIA"). For the reasons that follow, we will deny the petition for review.

The parties are familiar with the background of this case, and so we provide only a summary of the proceedings. The Pashos were admitted to the United States in September 2000 on non-immigrant visas, and they were authorized to remain in the United States until March 22, 2001. In January 2001, Neim Pasho ("Pasho") filed an affirmative asylum application, later supplemented; Florika Pasho was included on the application as a derivative asylum applicant. They applied for asylum, withholding of removal, and relief under the Convention Against Torture. In April 2001, the Pashos were placed in removal proceedings for overstaying their visas. They conceded removability. The IJ held an evidentiary hearing on the claims on January 30, 2006.

Pasho was the only testimonial witness at the hearing and claimed that he had been persecuted as an active member of the Democratic party and feared persecution and torture if he were to return to Albania. In brief summary of his testimony, Pasho was a political prisoner from 1976 to 1984 under the former Communist government. After the collapse of the regime in 1990, he was politically active as a member of the Democratic party. In 1991, he was arrested with several others for his role in a political protest during which they toppled a statue of a dictator; he was jailed for three days and beaten. In 1997, as a Democratic party election monitor, he was threatened and beaten by Socialist party members after he reported election irregularities, and his shop was burned. In 1998, he was accused of participating in a demonstration with the intent to overthrow the government. He was detained for several days, beaten, and interrogated. In late 1999, he was the victim of extortion with threats to kidnap his son. In 2000, during local elections, the police detained him for twenty-four hours and beat him, telling him that the Socialists would win the election and that he should not get involved. A few months later, he and his wife left Albania.

Pasho submitted supporting documentation, including a certificate of membership in the election commission for the Democratic party issued by the Office of Fier City Hall ("document 1," issued August 24,

2000), a certificate from the Office of Judicial Status in the Ministry of Justice indicating that Pasho was a political prisoner in 1976 ("document 2," issued August 22, 2000), and a decree by the Fier District Attorney's Office for Pasho's detention ("document 3," issued September 16, 1998). A consular investigator contacted each document's purported office of origin, and the documents were determined to be fraudulent. Specifically, regarding document 1, no such document was registered at the Office of Fier City Hall. Document 2 was determined to be a forgery: the Clerk of Judicial Status stated that Pasho's name was not listed in the records as a political prisoner in 1976 and that the certificate itself was not completed accurately. Document 3 was also determined to be a forgery: the District Prosecutor of Fier stated that his office had not issued the decree, the stamp on the document was false, and the office had never employed a police court officer with the name mentioned on the decree. When asked to explain the findings of the consular investigation, Pasho first claimed that he knew the consular investigator, Artan Ceci, to be the man who had persecuted him, and that he was a graduate of communist school. When asked to clarify whether he knew Ceci or only knew what school he had attended, Pasho insisted that he knew Ceci. When pressed, Pasho admitted that he had never met or seen Ceci before, but he knew others who shared Ceci's political opinion. Pasho stated his belief that Ceci was a Socialist party member who must have been biased against a formerly persecuted person such as himself. However, he had no proof that the investigator was in fact the same "Artan Ceci" of whom he spoke. Also, Pasho explained the fraudulent finding of document 1 by saying that

the mayor who told the investigator that the document could not be verified was politically biased against him. Regarding document 2, Pasho stated that he was not listed among the political prisoners in 1976 because many such prisoners were not registered. When asked about the origins of the documents, Pasho stated that his brother-in-law procured them through his connections with Socialist friends.

The IJ found that Pasho was not credible and failed to carry his burden of proof on his claims. The IJ denied all forms of relief and ordered the Pashos removed to Albania. On February 14, 2008, the BIA adopted and affirmed the IJ's decision, noting the adverse credibility determination based on the submission of fraudulent documents. The BIA also noted the findings that Pasho did not meet his burden of proof, and that any presumption of a well-founded fear of future persecution was rebutted by the recent change in political power in Albania, as documented in the record. This petition for review followed.

We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a). Our review is for substantial evidence, that is, "[w]e will defer to and uphold the IJ's adverse credibility determinations if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole,' but such findings must be based on inconsistencies and improbabilities that 'go to the heart of the asylum claim.'" *Chen v. Gonzales*, 434 F.3d 212, 216 (3d Cir.2005) (quoting *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)) (internal citation omitted). We must affirm "unless the evidence not only supports a contrary conclusion, but compels it." *Zubeda v. Ashcroft*, 333 F.3d 463, 471 (3d Cir.2003) (citations omitted).[1]

---

**1.** Under the REAL ID Act, an adverse credibility determination can be based on inconsistencies, inherent implausibilities, inaccuracies, and other factors, without regard to

The Pashos challenge the agency's adverse credibility determination primarily by challenging the consular investigation and report. First, the petitioners assert that their due process rights were violated when the documents submitted in support of their applications for relief were investigated for authenticity by the United States Embassy in Albania without their consent. Under 8 U.S.C. § 1252(d)(1), we lack jurisdiction to consider this challenge because the Pashos failed to exhaust their administrative remedies on this claim; they did not raise this challenge to the BIA. *Cf. Popal v. Gonzales*, 416 F.3d 249, 253 (3d Cir.2005) (the purposes of exhaustion are met when the issues have been fairly presented to the BIA). Therefore, the issue is not properly before us.[2]

Next, the Pashos assail the trustworthiness of the investigative report concluding that the three supporting documents submitted for authentication were fabricated. The petitioners contend, among other things, that Pasho successfully rebutted the report's findings with his testimony. We are not persuaded that his testimony, as described above, compels a different conclusion regarding his credibility, especially since his allegations of bias are unsubstantiated, and, in the case of the investigator, Artan Ceci, appear to have been contradicted by his own testimony. Also, Pasho's explanation of his name being among many other unlisted political prisoners in 1976 does not adequately address the determination that document 2

submitted by Pasho was a forged document that was inaccurately completed. Moreover, the petitioners' allegation that the consular investigator may have met with the incorrect official regarding document 3 appears to have no merit. The petitioners state that document 3 was issued by an officer of the Judicial Police, but the investigator contacted the Fier District Attorney's Office for verification. The petitioners suggest that the Fier District Attorney's Office is not qualified to determine the authenticity of a document issued by a "police court officer" or to know whether the named officer was ever in its employ. However, it appears from the document itself that the Judicial Police officers work for the Fier District Attorney's Office. The translated document states that the order was issued by an officer who identified himself as an "officer at the Judiciary Police of the Fier Attorney's," and the document further indicates the orders for Pasho's arrest, notification of the District Attorney, and placing Pasho into disposition of the Attorney." The petitioners arguments do not undermine the agency's reliance on the consular investigation report.

Finally, the Pashos cite this Court's decision in *Ezeagwuna v. Ashcroft*, 325 F.3d 396 (3d Cir.2003), and argue that the consular investigation report is untrustworthy and does not support the agency's adverse credibility finding. *Ezeagwuna* is distinguishable from the case here. *Ezeagwuna* involved a letter from the State Depart-

---

whether they go to the heart of an applicant's claim. 8 U.S.C. § 1158(b)(1)(B)(iii). The provisions of the REAL ID Act governing credibility determinations in asylum applications do not apply here, because the Pashos' asylum application was filed in 2001, long before the REAL ID Act's May 11, 2005 effective date. *See Chukwu v. Att'y Gen.*, 484 F.3d 185, 189 (3d Cir.2007). Despite the IJ's mention of the REAL ID Act provision concerning credibility determinations, the IJ appears to

have applied the pre-REAL ID standard. (*See* IJ Decision at 18 (discussing the fraudulent documents that concern the heart of the Pashos' claim).)

2. We add that the investigation report indicates that the nature of the investigation had not been revealed to any Foreign Service National, including the investigator.

ment Office of Country Reports and Asylum Affairs that repeated statements made in a previous summary of an investigation regarding document authenticity. The earlier summary did not contain any information about the investigation itself or about the investigator, and the author of the proffered letter was twice-removed from the investigator. Unlike in *Ezeagwuna*, the investigation report in Pasho's case is directly authored by the consul of the United States Embassy in Tirana, Albania. In further contrast to the letter in *Ezeagwuna*, the report here contains information about the named investigator (an embassy employee) and his qualifications, setting forth how the inquiries were made and the substance of the replies received from the Albanian authorities. The petitioners' reliance on *Ezeagwuna* is unavailing.

In addition to the attacks on the consular investigation and report, the Pashos argue that the IJ erred in not giving Florika Pasho the opportunity to testify to corroborate her husband's testimony. Again, we note that the Pashos did not exhaust this issue during the agency proceedings. Nevertheless, we note that neither the transcript nor anything else in the record validates their claim. Rather, counsel for the Pashos indicated at the beginning of the hearing that Neim Pasho was likely to be the only witness to testify, and there is no indication in the transcript that the petitioners wished to present Florika Pasho's testimony.

We conclude that the agency's adverse credibility finding was based on specific reasonable and substantial evidence supported by the record, and that the record

does not compel a different result. We have considered the Pashos' arguments in their brief but are unpersuaded that they have any merit.[3]

We will deny the petition for review.

---

**3.** Even assuming *arguendo* that Pasho were deemed to be credible, we note that the petitioners' argument that the IJ failed to consider whether they were eligible for asylum under 8 C.F.R. § 1208.13(b)(1)(iii) (asylum based on the severity of past persecution even

in the absence of a well-founded fear of persecution) would be unavailing. The Pashos did not argue the issue during the agency proceedings, and the claim is thus administratively unexhausted.