NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1685
_____

GURMEET SINGH SRAN,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of and Decision of the
Board of Immigration Appeals
BIA No. A208-617-849
(Immigration Judge: David Cheng)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 12, 2023

Before:  CHAGARES, *Chief Judge*, SCIRICA, and AMBRO, *Circuit Judges*.

(Filed: August 24, 2023)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Gurmeet Singh Sran, a native and citizen of India, seeks review of the Board of Immigration Appeals' dismissal of his applications for asylum, withholding of removal, and relief under the Convention Against Torture. Sran asserts he was persecuted for his membership in the Mann Party by members of the Badal Party while living in Punjab.[1] For the reasons discussed below, we will affirm the Board of Immigration Appeals.

I.

Sran was once a member of the Badal Party. He joined the Mann Party in hopes of fighting for the poor, Sikh rights, and the eradication of the caste system. Sran would go to rallies and do what Mann Party leadership asked of him, but he did not hold a specific title or position in the party. Before the Immigration Judge (IJ), Sran testified that members of the Badal Party tried to coerce him into rejoining their party on three occasions: a phone call from a Badal Party member who told him to switch his affiliation from the Mann Party to the Badal Party; a physical attack by Badal Party members; and a second physical attack by Badal Party members, which left him with injuries requiring medical treatment.

Sran received the phone call a month after joining the Mann Party. He was first attacked three months later as he walked home alone one evening. Seven masked people surrounded Sran, identified themselves as Badal Party members, and slapped him around. They told Sran that they had seen him participate in Mann Party events and castigated him

---

[1] The Mann Party is sometimes referred to as Shiromani Akali Dal Amritsar. It broke away from the Badal Party, which is also referred to as Shiromani Akali Dal.

for ignoring the phone call. They threatened to come back and "really warn" Sran if he again refused to join the Badal Party. Then they left.

Sran was attacked again four months later. As before, seven people identifying themselves as Badal Party members surrounded Sran as he was walking home alone and told him to join the Badal Party. This time, however, they also kicked him and beat him with hockey sticks for about ten minutes. They ran back to their car when a bus stopped nearby.

Someone living in Sran's village saw the attack and told Sran's father, who took Sran to a nearby doctor's office. The doctor diagnosed Sran with internal injuries— swelling in his abdomen, but no broken ribs—and treated him for about two hours. Sran saw the doctor periodically over the next two weeks.

Sran and his father attempted to file a report after each attack but were told on both occasions that the police could not act against the Badal Party. Even though their Sarpanch—village leader—came with them after the second attack, the police still refused to act and threatened to charge them with making a false complaint if they tried to file another report.

Sran left his home to go into hiding with relatives. He fled to the United States in April 2016. After he left, his family told him that Badal Party members occasionally returned to the village to look for him.

The IJ denied Sran's applications for relief and protection. The IJ found that Sran had no real explanation for discrepancies between his testimony, his written statement, and his parents' affidavits, and so was not credible. Even if Sran were credible, the IJ

3

concluded, he failed to demonstrate that the call and attacks qualified as persecution. The IJ also determined that Sran had not shown that his fear of future persecution was well-founded because he did not explain why Badal Party members would go to such lengths to target someone who held no position of significance in the Mann Party. Because Sran did not meet the burden of proof for his asylum claim, the IJ determined that he necessarily failed to meet the higher burden of proof for his withholding of removal claim. Finally, the IJ found that Sran had not met the burden of proof for his Convention Against Torture (CAT) claim because the call and attacks did not qualify as torture and the record did not illustrate that the Indian government would consent or acquiesce to Sran's torture if he returned to India.

Sran timely appealed the IJ's decision. His brief only challenged the IJ's adverse-credibility finding, though his notice of appeal referenced persecution and the CAT. The Board of Immigration Appeals (BIA) held that Sran did not "meaningfully challenge" the IJ's conclusion that Sran failed to demonstrate "persecution on account of a protected ground." AR 3. Accordingly, the BIA deemed his other asylum, withholding of removal, and CAT arguments forfeited and dismissed the appeal. Sran then timely petitioned for review.

4

II.[2]

A.

Asylum applicants must show that they are a "refugee" under § 101(a)(42)(A) of the Immigration and Nationality Act. More specifically, applicants must demonstrate that they have suffered, or fear suffering, persecution based on a statutorily protected ground—"race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1). Persecution is generally understood to encompass only severe harms, such as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS*, 12 F.3d 1233, 1243

---

[2] We have jurisdiction over a final order of removal under 8 U.S.C. § 1252(a)(1). We review both the IJ's and the BIA's decisions when the BIA "affirms and partially reiterates the IJ's discussions and determinations." *Myrie v. AG*, 855 F.3d 509, 515 (3d Cir. 2017). Our review is limited to determining whether the denial of relief and protection is supported by substantial evidence. *Jarbough v. AG*, 483 F.3d 184, 191 (3d Cir. 2007). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude the contrary." 8 U.S.C. § 1252(b)(4)(B). Our review of legal questions is plenary. *Blanco v. AG*, 967 F.3d 304, 310 (3d Cir. 2020).

The Government filed a motion to dismiss Sran's petition on the ground that Sran failed to exhaust all of his claims. We denied the motion without determining which of Sran's claims were exhausted and which were not. In *Santos-Zacaria v. Garland*, 143 S. Ct. 1103 (2023), the Supreme Court held that the exhaustion requirement in § 1252(d)(1) is not jurisdictional. This changes the law in the Third Circuit. We have followed a lenient policy for determining exhaustion but nevertheless treated § 1251(d)(1) as jurisdictional. *See Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 422 (3d Cir. 2005) ("[S]o long as an immigration petitioner makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted [his] administrative remedies."); *Popal v. Gonzales*, 416 F.3d 249, 252 (3d Cir. 2005) (treating exhaustion requirement as jurisdictional). Accordingly, we have jurisdiction over all of Sran's claims. If a petitioner has an unexhausted claim, we consider whether that claim is forfeited.

(3d Cir. 1993). Persecution must be at the hands of the government or forces the government is unable or unwilling to control. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). Unfair, unjust, unlawful, or unconstitutional conduct, without more, may not qualify as persecution. *Ahmed v. Ashcroft*, 341 F.3d 214, 218 (3d Cir. 2003).

There is no requirement that harm is only physical. *See Chavarria v. Gonzalez*, 446 F.3d 508, 520 (3d Cir. 2006). An unfulfilled threat may constitute persecution so long as it "poses a severe affront to the petitioner's life or freedom." *Herrera-Reyes v. AG*, 952 F.3d 101, 108 (3d Cir. 2020) (cleaned up); *see also Blanco v. AG*, 967 F.3d 304, 312 (3d Cir. 2020) (clarifying that the standard is "concrete and menacing," not "imminent, concrete, and menacing").

In general, a brief attack that does not result in lasting physical injury does not qualify as persecution. *See, e.g.*, *Kibinda v. AG*, 477 F.3d 113, 119–20 (3d Cir. 2007) (finding no persecution where petitioner was struck in the jaw during a five-day detention, requiring stitches that left a scar); *Singh v. United States*, No. 22-2424, 2023 WL 2906170 (3d Cir. Apr. 12, 2023) (finding no past persecution where petitioner, a member of the Mann Party, received a death threat over the phone from a Badal Party member and then received minor injuries in two attacks, both under two minutes, by Badal Party members a few months apart); *cf. Blanco v. AG*, 967 F.3d 304, 315 (3d Cir. 2020) (finding persecution where petitioner suffered no serious injuries after being beaten for hours because petitioner also received "concrete and menacing" death threats). That noted, we consider events cumulatively—"a series of incidents of physical or economic mistreatment could, taken together, be sufficiently abusive to amount to persecution." *Fei Mei Cheng v. AG*, 623 F.3d

6

175, 193 (3d Cir. 2010) (discussing escalating verbal threats and seizure of petitioner's family farm).

If an applicant cannot demonstrate past persecution, he must demonstrate a genuine well-founded fear of future persecution. *Espinosa-Cortez v. AG*, 607 F.3d 101, 108 (3d Cir. 2010). A fear of future persecution is considered objectively reasonable if a petitioner establishes that he will be individually targeted or subjected to a pattern or practice of persecution based on a statutorily protected ground. 8 C.F.R. § 1208.13(b)(2)(iii); *Doe v. AG*, 956 F.3d 135, 151 (3d Cir. 2020).

The standard of proof for withholding of removal is higher than the standard for asylum—it requires that a petitioner show future persecution is "more likely than not." *Valdiviezo-Galdamez v. AG*, 663 F.3d 582, 591 (3d Cir. 2011). Accordingly, an applicant cannot succeed on his withholding-of-removal claim without meeting the burden of proof for his asylum claim.

To succeed on a CAT claim, a petitioner must show "that it is more likely than not that he or she would be tortured if removed [to another State]." 8 C.F.R. § 1208.16(c)(2). Torture is "(1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." *Auguste v. Ridge*, 395 F.3d 123, 151 (3d Cir. 2005) (citing *Matter of J.E.*, 23 I.&N. Dec. 291, 297 (BIA 2002)); *see also Myrie v. AG*, 855 F.3d 509, 515 (3d Cir. 2017). A petitioner may establish consent or acquiescence—even if the government formally opposes the entity allegedly targeting the

7

petitioner—by providing "sufficient evidence that the government is willfully blind to such activities." *Myrie*, 855 F.3d at 516 (citing *Silva-Rengift v. AG*, 473 F.3d 58, 65 (3d Cir. 2007)).

B.

Sran presents his asylum, withholding of removal, and CAT claims to us as if they were exhausted. Even if we treat all of Sran's claims as exhausted, we must deny his petition for review. Substantial evidence supports the BIA's and IJ's conclusions. Under our caselaw, persecution is a high bar—one which the threats and beatings Sran endured do not clear.[3] And because neither Sran's testimony nor the rest of the record sheds much light on the likelihood of further attacks, Sran cannot establish a well-founded fear of future persecution. Because Sran is not able to carry his burden of proof for his asylum claim, he is unable to meet the higher standard for withholding of removal. Similarly, the record does not establish that Sran was subjected to torture or is at risk of being subjected to torture if he returns to India.

Substantial evidence supports the denial of Sran's asylum claim. Neither the phone call nor either attack constitutes persecution when considered independently. The Badal Party member who called Sran did not make an overt threat against Sran or his family. A vague or implied threat must be accompanied by other evidence in the record. *See*

---

[3] The Supreme Court's recent decision in *Santos-Zacaria* may change our exhaustion analysis now that we may exercise jurisdiction over unexhausted claims. Because of this change, and the fact that this case does not turn on exhaustion, we do not decide whether Sran's passing mention of claims in his notice of appeal means he exhausted those claims.

*Chavarria*, 446 F.3d at 519–20 (finding death threat to petitioner during robbery "concrete and menacing" because the record demonstrated that the robbers sought out petitioner because he had thwarted an attack on members of a political group the robbers opposed); *Blanco*, 967 F.3d at 313 (finding death threats "concrete and menacing" because petitioner was targeted after attending a political march and other attendees had been killed, including some who had received similar threats). The record before us lacks such evidence. It is unclear if any other Mann Party members were subjected to serious attacks or killed, or whether Sran was targeted because he used to be a member of the Badal Party.

As noted above, a solitary beating that does not result in serious injury does not generally constitute persecution. *Chen v. Ashcroft*, 381 F.3d 221, 234–35 (3d Cir. 2004). Sran was not injured in the first attack, and he suffered no broken bones or other lasting physical harm from the second attack.

As neither the phone call nor either attack constitutes persecution when considered independently, we look to see whether the two attacks and the phone call cumulatively qualify as persecution. *See Fei Mei Cheng*, 623 F.3d at 193. During the first attack, at least one Badal Party member told Sran that the phone call and attack were warnings, and that he could expect worse if he did not join the Badal Party. Sran was then attacked more severely. This seems to indicate that he was subjected to "escalating and consummated threats." *Id.* at 193 (citing *Gomez-Zuluaga v. AG*, 527 F.3d 330, 343 (3d Cir. 2008)).

When we have held that threats coupled with beatings that did not leave the petitioner with lasting physical injury can constitute past persecution, we have done so on a more robust record. *Blanco*, 967 F.3d at 317–18. In *Blanco*, Honduran police officers

9

abducted the petitioner at a political march and held him at an abandoned house for approximately twelve hours. *Id.* at 308. The officers beat him repeatedly in forty- to sixty-minute sessions, called him racial slurs, and threatened to kill him and his family if he participated in future marches. *Id.* The petitioner went to the hospital after the officers dropped him off in an abandoned lot. *Id.* He was evaluated and sent home with an over-the-counter painkiller because he had no bruises, cuts, or broken bones. *Id.* The petitioner moved around Honduras for the next year in an attempt to evade the police, but he received letters and a phone call threatening him and his family with death if he did not leave the country. *Id.* The petitioner learned that other march attendees had received threatening letters and some had been killed. *Id.*

Sran's beatings were far shorter than those in *Blanco*—the second was ten minutes—and the threats Sran received were vague. Although Badal Party members looked for Sran in his home village, Sran did not receive threats when he went to stay with relatives. And as noted above, the record does not include evidence of other attacks on either Sran or other Mann Party members. Accordingly, we find that the phone call and attacks, taken together, do not rise to the level of persecution.

Because Sran has not established past persecution, we consider whether he nevertheless has a well-founded fear of future persecution. The IJ, finding that Sran was not a credible witness, concluded that his fear was not genuine. While we would dispute the IJ's adverse-credibility determination, it is not dispositive. There is substantial evidence to support the IJ's alternative conclusion that Sran presented insufficient evidence that he would face torture if removed to India. Sran does not explain why the Badal Party, which

10

is not a national party, would be able to find him anywhere in India and would expend the resources necessary to do so. Neither does Sran mention whether other general members of the Mann Party have been persecuted or whether he expects the Badal Party to continue carrying out attacks regardless of changes in Punjab's political climate.[4] We do not expect Sran to have access to detailed information about the Badal Party's motives or plans. But without any explanations or evidence, there is no way to determine whether his fear of future persecution is well-founded.

As there is substantial evidence to support the denial of Sran's asylum claim, we must conclude that there is likewise substantial evidence to support the denial of his withholding of removal claim. Without establishing a well-founded fear of future persecution, Sran cannot demonstrate that it is more likely than not that he will experience persecution if removed to India.

We also conclude that there is substantial evidence to support the denial of Sran's CAT claim. The police response to Sran's beatings could indicate consent or acquiescence to the Badal Party's actions. But torture, like persecution, only encompasses severe harm and suffering. *See Auguste*, 395 F.3d at 151; *Fatin*, 12 F.3d at 1243. Because the phone

---

[4] The Mann Party's political fortunes may have shifted since Sran left India. Mann Party president Simranjit Singh Mann won a seat in Lok Sabha, the lower house of India's parliament, in June 2022. He last won a seat in 1999. The Badal Party candidate was not a frontrunner in the June 2022 election. *See* Neel Kamal, *Sangrur Lok Sabha Byelection Results: SAD (Amritsar) President Simranjit Singh Mann Defeats AAP's Gurmail Singh*, TIMES OF INDIA (Jun. 26, 2022, 2:55 PM IST), https://timesofindia.indiatimes.com/city/ludhiana/sangrur-lok-sabha-byelection-results-sad-amritsar-president-simranjit-singh-mann-defeats-aaps-gurmail-singh/articleshow/92470642.cms.

call and two attacks do not constitute severe harm under our caselaw, they do not qualify as torture, and Sran's CAT claim cannot succeed.

III.

For the reasons stated above, we will DENY the petition for review. [5]

---

[5] Because we find that Sran has not carried his burden of proof as to his asylum and withholding-of-removal claims, we do not reach his arguments regarding the "nexus" and "unwilling or unable" aspects of the asylum analysis.